[No. 20204. Department Two. March 31, 1927.]

## W. H. COOK, *Appellant*, v. WASHINGTON MUTUAL SAVINGS BANK, *Respondent*.[1]

[1] MORTGAGES (135)—STIPULATIONS FOR MATURITY OF DEBT IN DEFAULT—WAIVER. A mortgagee, by demanding the payment of delinquent taxes, and giving notice, that if not paid, it would declare the whole sum due, did not irrevocably mature the entire debt, so as to waive the right to have the term of the loan continue and bear future interest as agreed upon, in case of prepayment of the principal, where the matter was at the time compromised by a pledge of rentals reciting that the mortgagee agrees to forbear exercising its right to demand payment of the entire sum.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered June 5, 1926, in favor of the defendant upon granting a nonsuit in an action for money received, tried on the merits to the jury. Affirmed.

*Frank S. Griffith,* for appellant.

*Peters & Powell* and *Robert H. Evans,* for respondent.

PARKER, J.—The plaintiff, Cook, as assignee of Ella S. Rosenberg, seeks recovery from the defendant bank in the sum of one thousand five hundred dollars, claimed to have been paid by her to the bank under

[1]Reported in 254 Pac. 834.

coercion and without consideration, to obtain surrender of a note and release of a mortgage securing the same, held by the bank against her property, before the stated date of maturity of the debt so evidenced and secured. The case proceeded to trial in the superior court for King county sitting with a jury. At the conclusion of the introduction of the evidence, counsel for the bank moved the court for judgment denying Cook any recovery, insisting that it was entitled to such a judgment as a matter of law. This motion was by the court sustained, and final judgment rendered accordingly in favor of the bank. From this disposition of the case in the superior court Cook has appealed to this court.

The controlling facts, as we view this record, are either admitted or proven beyond controversy, and may be summarized as follows: On July 2, 1924, Mrs. Rosenberg borrowed from the bank $230,000, for which she executed and delivered to it her promissory note reading, in so far as we need here notice its language, as follows:

"Seattle, Washington, July 2, 1924.

"For value received, I promise to pay to the order of the Washington Mutual Savings Bank, a Washington corporation, at its office in the City of Seattle, Washington, the sum of two hundred thirty thousand and no/100 dollars ($230,000), with interest thereon at the rate of 5½% per annum from date, payable quarter-annually.

"Payment of this note is to be made as follows:

"$5,000 quarter-annually, beginning October 1, 1924, and ending July 1, 1926, and $6,250 quarter-annually, beginning October 1, 1926, and ending April 1, 1934, and the entire balance of principal and interest on July 1, 1934, each quarter-annual payment to be applied, first, to pay accrued interest, and then to the reduction of principal.

"If any installment of principal or interest be not

paid when due, the same shall thereafter bear interest at the rate of ten per cent, (10%) per annum, and, at the option of the holder hereof the entire unpaid balance of principal and all accrued interest shall, without notice, become immediately due and payable. The entire amount of this note shall likewise become due, at the holder's option, upon breach of any covenant in the mortgage by which this note is secured. . .

"(Signed) Ella S. Rosenberg."

On the same day, to secure the payment of the indebtedness so evidenced, Mrs. Rosenberg executed and delivered to the bank a mortgage upon two certain business properties in Seattle belonging to her. The mortgage contains, among other provisions, the following:

"The mortgagor covenants with the mortgagee as follows: That she. . . will pay before delinquency all lawful taxes and assessments upon said lands. . . The whole debt secured by this mortgage shall become due at the mortgagee's option upon any default in the payment of interest or principal or upon breach of any covenant of this mortgage. . . The mortgagor, her heirs or assigns, shall have the right to pay on the first day of January, April, July or October of any year in reduction of the principal of the debt hereby secured the sum of eighty thousand Dollars ($80,-000.00) or the sum of One Hundred Seventy Thousand Dollars ($170,000.00) in addition to the compulsory quarterly payment; and the right in case the smaller sum be so paid to have released from this mortgage the property in the Extension to Terry's First Addition, and in case the larger sum be so paid to have released the property in Block 2 of the Plat of an Addition to the Town of Seattle; provided, that in case of such prepayment of either of said sums the mortgagor shall pay interest on the sum paid for ninety (90) days beyond the date of payment if the payment be made within two (2) years from the date of this mortgage, and for sixty (60) days beyond the date of payment if payment be made more than two (2) years after the date of this mortgage."

There are no other provisions in the note or mortgage entitling Mrs. Rosenberg to pay upon the principal indebtedness before the stated date of full maturity, with a view of her saving paying accruing interest during the term of the loan.

In February, 1925, there had become due and delinquent approximately twelve thousand dollars of general taxes charged against the property. Mrs. Rosenberg was by the bank notified through her resident agent that these taxes must be paid, and given to understand that, if they were not paid, the bank would elect to exercise its right to declare the whole debt due because of her default in that regard, and proceed to foreclose the mortgage. Thereafter, the taxes remaining unpaid, the bank had its attorneys prepare papers making ready for an anticipated foreclosure of the mortgage. However, no such foreclosure action was ever commenced, either by service of summons or filing of any papers in court. Thereafter, negotiations were entered into between the bank and Mrs. Rosenberg's resident agent, looking to the making of some arrangement by which the rentals of the property should be applied upon the debt and other obligations resting upon Mrs. Rosenberg by the terms of the note and mortgage. These negotiations resulted in a contract being entered into on July 17, 1925, signed by Mrs. Rosenberg personally, the bank and West & Wheeler, Inc., a real estate and rental concern of Seattle, reading, in so far as we need here notice its terms, as follows:

"PLEDGE OF RENTALS AND APPOINTMENT OF AGENT.

"This Memorandum made this 17th day of July, 1925, between Ella S. Rosenberg, a widow, of Seattle, Washington, hereinafter called the owner, and Washington Mutual Savings Bank, a Washington corporation, hereinafter called the mortgagee, and West &

Wheeler, Inc., a Washington corporation, hereinafter called the agent,

"Whereas the mortgagee holds the owner's mortgage dated July 2, 1924, covering certain real property in King County, Washington, described as . . . to secure a loan of $230,000.00, the principal of which on July 1, 1925, had been reduced to $221,723.45; and

"Whereas the owner is in default under the mortgage by reason of her failure to pay the general taxes for the year 1924 upon the mortgaged properties, amounting with interest to July 16, 1925, to $12,985.29, which the mortgagee paid on July 16, 1925; on account of which the mortgagee has the right to demand the payment immediately of the entire indebtedness secured by the mortgage.

"Now, the owner hereby assigns and transfers to the agent all the rents, issues and profits of the mortgaged properties, whether accrued or to accrue, and whether from present or future tenancies, leases and uses.

"And the owner hereby appoints the said West & Wheeler, Inc., her agent to have the care and management of the said properties with power to rent or lease the same or any part or parts thereof for such periods of time and for such rentals as the agent may deem advisable, and to make repairs and alterations and to pay taxes and to effect insurance, and generally to maintain and operate the properties.

"And it is Agreed:

"1. That the assignment of rents, issues and profits and the appointment of the agent hereinabove made shall be irrevocable until the entire indebtedness secured by the mortgage shall have been paid:

"2. That money received by the agent as rents, issues and profits of the mortgaged properties shall be held by it and be applied and paid as follows:

"(a) To pay the costs of maintenance and operation of the properties, including reasonable compensation to the agent, which shall not exceed the rate of compensation for like services sanctioned by the Seattle Real Estate Board;

"(b)   To pay the taxes and assessments on the mortgaged properties accruing from time to time;   .
.  .

"(c)   To pay premiums on fire insurance required by the mortgagee's mortgage to be maintained upon the improvements of the properties   .   .   .

"(d)   To pay to the mortgagee the quarter-annual payments on the mortgage debt required by the note secured by the mortgage;   .   .   .

"(e)   To pay to the owner quarterly on the first days of January, April, July and October of each year any residue of income remaining after the payments hereinabove directed shall have been made   .   .   .

"3.   The mortgagee agrees to forbear exercising its right under the existing default to demand payment of the entire debt secured by the mortgage; provided that the owner within six months from July 16, 1925, shall pay to the mortgagee not less than one-half of the sum paid by it for the 1924 general taxes, and within six months thereafter the other half thereof, with interest from July 16, 1925, until paid at the rate of 10% per annum."

· Thereafter, about October, 1925, Mrs. Rosenberg, seeking to effect full payment of the whole of the unpaid balance of the principal of the indebtedness, with interest to date, and thereby obtain surrender of the note and release of the mortgage, tendered to the bank a sum equal to the whole of the amount of the unpaid principal, with accrued interest up to that time, and demanded of the bank surrender of the note and release of the mortgage. The unpaid principal then amounted to over $200,000. This tender and demand the bank declined to accede to; offering, however, to surrender the note and release the mortgage if Mrs. Rosenberg would pay an additional sum of $1,500 for the surrender of the bank's claimed right to have the term of the loan and interest upon the loan continue. This claimed right the bank manifestly considered as expressly guaranteed to it by the above last quoted

paragraph from the mortgage, at least to the extent of more than $1,500. It is plain that $1,500 is much less than five and one-half per cent on the balance of over $200,000 then unpaid upon the principal of the mortgage debt for a period of ninety days, and even much less than five and one-half per cent on $170,000 for that period, which sum Mrs. Rosenberg was privileged to pay at the end of any quarterly period, as provided in the last above quoted portion of the mortgage; which at all events the bank was entitled to demand and receive for a full and absolute release of the indebtedness and the mortgage at that time; the tender being made within two years from the date of the note and mortgage. Mrs. Rosenberg finally acceded to this $1,500 demand, paying the bank that additional sum, and thereupon the bank surrendered the note and released the mortgage. The payment by Mrs. Rosenberg of this additional $1,500 is claimed to have been exacted from her by coercion and without consideration, and that therefore the bank is liable for the re-payment thereof to Cook who has succeeded by assignment from Mrs. Rosenberg to whatever right she had in that behalf.

[1] The contentions here made in behalf of Cook are rested upon the theory that the bank irrevocably elected to declare the whole amount of the indebtedness due at or prior to the time of entering into the "pledge of rentals" contract of July 17, 1925, above quoted from, and thereby, in legal effect, voluntarily matured the whole of the indebtedness and therefore then waived all right to have the term of the loan continue and bear future accruing interest, as agreed upon by the terms of the note and mortgage. We think that the trial judge was correct in holding as a matter of law that the bank did not so voluntarily mature the

whole indebtedness. Not only is there no affirmative evidence, as we read this record, so showing, but the recitals and provisions of the "pledge of rentals" contract clearly negative any such election or intention of election on the part of the bank. One of those recitals, following the mentioning of the default and payment of taxes, is, "on account of which the mortgagee has the right to demand payment immediately of the entire indebtedness secured by the mortgage;" plainly inferring that no such demand had been unconditionally made. Another one of those recitals is: "The mortgagee agrees to forbear exercising its right under the existing default to demand payment of the entire debt secured by the mortgage," thus clearly negativing any such election or intention of election on the part of the bank. Plainly, the bank never did more than evidence its threat to declare the whole debt due and foreclose, if Mrs. Rosenberg's default was not cured by payment of the delinquent taxes. Our decisions in *Weinberg v. Naher,* 51 Wash. 591, 99 Pac. 736, 22 L. R. A. (N. S.) 956; *Coman v. Peters,* 52 Wash. 574, 100 Pac. 1002, and *Pedersen v. Fisher,* 139 Wash. 28, 245 Pac. 30, while not directly in point, are in harmony with our view here reached that it must be decided as a matter of law that the bank never elected to declare the whole of the indebtedness evidenced by this note and mortgage due and payable, nor conceded such indebtedness to be wholly due and payable until it received the whole amount which had accrued thereon and the $1,500 additional when those sums were finally paid by Mrs. Rosenberg in the fall of 1925. Plainly, we think the bank demanded even less than its full rights under the terms of the note and mortgage when it demanded and received from Mrs. Rosenberg the additional $1,500. For that it parted with

future profits it was plainly entitled to in the form of future accruing interest upon this large loan. Mrs. Rosenberg was not in any legal sense coerced into paying that additional sum. She voluntarily paid it for the surrender of that valuable right belonging to the bank.

Some contention is made in this connection which seems to be rested upon the theory that by the "pledge of rentals" contract, the bank became, in legal effect, a mortgagee in possession. We hardly think such is the bank's relation to the property under that contract. However, we are at a loss to understand what difference that would make. The bank would still have no interest in the property other than a lienable interest under our well settled doctrine touching the rights of a mortgagee, which is, that he is only a lien claimant and not in any sense a holder of the legal title to the mortgaged property. Such a mortgagee's right to have the loan term continue to its end and he thus reap the benefit of future accruing interest surely would not be lessened by his possession of the property under agreement with the mortgagor.

The judgment is affirmed.

MACKINTOSH, C. J., BRIDGES, ASKREN, and TOLMAN, JJ., concur.