# HARTFORD LIFE INSURANCE COMPANY,
*Respondent,*

*v.*

# RANDALL et ux, *Appellants.*
## (No. A7702-02142, SC 25567)
583 P2d 1126

Thomas A. Davis, of Benson, Arenz, Lucas & Davis, Portland, argued the cause and filed a brief for appellants.

David P. Weiner, of Samuels, Samuels, Yoelin & Weiner, Portland, argued the cause and filed a brief for respondent.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent, and Linde, Justices.

HOLMAN, J.

## HOLMAN, J.

This is an action brought by plaintiff seeking a judgment for past due payments on a promissory note executed by defendants and secured by an encumbrance on real property. Defendants filed counterclaims requesting damages caused to defendants by plaintiff's refusal to allow the note to be satisfied prior to the time permitted by the provisions of the note. Plaintiff moved for summary judgment which was granted and defendants appeal.

The provision in the note is:

> "There is reserved to the Borrower, commencing with the second (2nd) loan year, the right to pay without prepayment premium up to 10% of the original loan amount in any loan year, in addition to the mandatory monthly payments, on any interest date, without prior notice; this right is noncumulative. The Borrower shall have the further right, commencing with the eleventh (11th) loan year, to prepay additional indebtedness or the entire principal balance on any interest date, upon giving sixty (60) days prior written notice, for a prepayment fee of three % of the amount prepayed, said fee declining one-half % annually thereafter to a minimum of one %. Only one of these options may be exercised in any one loan year."

■ Defendants contend the trial court erred in granting summary judgment because as a matter of law the mortgage note provision which forbade a complete payoff for 11 years is an unreasonable restraint upon the alienation of the real property used as security and an unreasonable restraint on commercial trade. Defendants say they

> "* * * sought to refinance the property so as to be able to use the equity contained in the property for other investments and further to make the property more sellable [sic] on the open market by eliminating a large cash down payment to a prospective buyer."

Defendants admit they can find no direct authority for their contention, but they analogize the prepayment restriction to provisions of notes secured by encum-

brances upon real property which make the entire indebtedness due on the sale or further encumbrance of the security (due-on clause).[1] In certain circumstances due-on clauses have been held by some courts to be an unnecessary restriction on the sale of the real property used as security.

The first flaw in defendants' contention is that the only restraint upon them is their inability to refinance and to pay off the encumbrance. There is nothing about the terms of the loan which prevents defendants from selling their interest in the encumbered property. They do not contend that the terms of the present encumbrance make the property unattractive to a purchaser of their interest. In effect, they say that their equity is so large that few purchasers can make a large enough down payment to buy the property and the only way defendants can make their equity available for other use is to refinance. This inability to sell is caused not by plaintiff's mortgage but by the size of defendants' equity and their desire to secure their equity in a lump sum. Their complaint is not one of restraint on the sale of their property; their complaint is that they cannot refinance and make their equity available.

This brings into question whether there is any public policy against voluntarily committing part of one's wealth to a venture for a set period of time as a condition to borrowing money to finance such venture. Defendants point to no such policy other than the vague term, "unreasonable restraint of commercial trade," for which they cite no authority. There is an expense attached to loaning money on real property, and it is an entirely legitimate aim of purveyors of credit to loan it for a length of time and at a rate of interest which guarantee a certain net return on the

---

[1]The prominence of the due-on clause in recent legal literature undoubtedly reflects rising interest rates and the practice of lenders to seek enhanced interest rates on their loans in return for non-exercise of the provision upon sale of the property by the borrower. See Annotation, 69 ALR3d 713 (1976), for a discussion of due-on clauses.

management of the money. This appears to us to be no less valuable an interest than that of defendants' in making liquid their equity for the purpose of using it elsewhere. It is a trade off of commercially beneficial interests which defendants knowingly made when they borrowed the money.

■ The case upon which defendants principally depend for the analogy is *Tucker v. Lassen Sav. & Loan Asso.,* 12 Cal3d 629, 116 Cal Rptr 633, 526 P2d 1169 (1974). As we read this case, it holds that the purpose of the due-on clause is to protect the security of the lender. It does not hold that due-on clauses are necessarily an illegal restraint upon alienation. Rather, it holds that in the particular circumstance in which the enforcement of such a clause comes into question, the necessity for the lender's protection is weighed against the extent to which the clause would impair sale of a borrower's property.[2] This precedent is of little value to defendants because, as illustrated previously, when the opposing interests in the present situation are weighed, no public policy similar to the one against restrictions upon the alienation of property comes to the aid of the borrowers. It is merely a trade off of commercially beneficial interests.

It is our conclusion that the clause limiting the borrower's right of prepayment at any time is not in violation of public policy and that the decision of the trial court should be affirmed.

---

[2] *Tucker v. Lassen Sav. & Loan Asso.,* 12 Cal3d 629, 116 Cal Rptr 633, 526 P2d 1169 (1974) does not necessarily represent the majority view. 69 ALR3d 713, 732 n. 91 (1976).