[Civ. No. 4475. Fifth Dist. Sept. 2, 1980.]

GEORGE A. WILLIAMS et al., Plaintiffs and Appellants, v. FRANK W. FASSLER et al., Defendants and Respondents.

**COUNSEL**

Haight & Harriman, Haight & Reed, Gerald A. W. Haight and Richard L. Harriman for Plaintiffs and Appellants.

Price, Martin & Crabtree, Martin, Crabtree, Schmidt & Zeff, Walter J. Schmidt and John H. Dodds for Defendants and Respondents.

## OPINION

CONN, J.*—Appellants brought an action in the court below seeking declaratory relief and a determination of invalidity of a prepayment penalty clause in a promissory note and other documents in a land sale transaction. After respondents filed their answer, all parties moved for summary judgment. The trial court denied appellants' motion and granted summary judgment in favor of respondents. Appellants now appeal from the order and judgment.

The sole issue in this appeal is whether the trial court abused its discretion in determining that a 50 percent prepayment penalty is enforceable under the facts of this case.

The evidence considered by the trial court in making its rulings on the motions for summary judgment was set forth in the declarations filed by the parties. There is no dispute about the facts summarized below.

Respondent Frank Fassler[1] owned outright a small ranch consisting of 20 acres of land with a 1,000 square feet dwelling located in the eastern portion of Stanislaus County. He desired to sell the ranch but, not wanting to take the entire taxable gain in the year of the sale, he negotiated with appellants to receive no more than 30 percent of the sales price in the first year and not to receive any balloon payments or extra monies for at least the first five years after the sale.

The deposit receipt contract contained the following language: "...purchase money trust deed and note in favor of seller in the sum of $80,940.00 payable $8,709.14 annually, including principal, and 8-3/4% interest per annum. Said note to be amortized over a 20-year period. Buyer and Seller further agree that no balloon payment or extra monies to be paid for the first five years or there is to be a 50% penalty on these extra funds paid."

---

*Assigned by the Chairperson of the Judicial Council.

[1]Mayme A. Fassler, second wife of respondent Frank Fassler, was erroneously included in both the deed of trust and the note but at no time claimed any interest in the property. She executed a letter evidencing such fact and executed and recorded an assignment of the deed of trust. Appellants conceded at oral argument that Mayme had no interest in the action and should be deemed to be dismissed.

The escrow instructions reflected the above terms and prepayment penalty provision. The promissory note described the prepayment penalty in the following words: "If any amount is paid on the herein Note over and above the regular payment there will be a penalty of 50% of the amount of such overpayment for the first 5 years of said note."

Appellants purchased the property on July 28, 1977, for a total price of $114,000, including a note subject to the prepayment penalty in the amount of $80,940. Seven months after the sale, on March 22, 1978, appellants filed this action for declaratory relief to determine the validity of the prepayment penalty clause because they desired to build a home on the property and it would be necessary to pay off this obligation in order to obtain financing for the new home.

Respondents' accountant, L. R. Thompson, stated in a declaration: "Should the entire balance of the promissory note be paid off in the year 1977, [*sic*] Mr. Fassler will have additional state and federal taxes amounting to an estimated $16,371.00, and in addition thereto, the sums paid in addition to principal and interest called for in the note by way of penalty would be taxed at the rate of approximately 55%. Therefore, it would take approximately $33,000.00 additional paid by way of penalty in order to have sufficient funds with which to pay the additional tax liability and end up in the same place had the note not been paid off in 1977 [*sic*]."

Appellants contend that the prepayment penalty should be invalidated because it is so high as to be unreasonable.

As pointed out in 1 Miller and Starr, Current Law of California Real Estate (1975) Deeds of Trust and Mortgages, sections 3:70 through 3:72, pages 450-456, there are two types of prepayment fees. ■ There is a nonoption prepayment fee which arises when the contract constitutes a locked-in loan which prevents all prepayment rights. When the trustor requests permission to repay the loan, or a part of it, before it becomes due, the lender can negotiate the charge he will accept in return for consenting to the prepayment. It should be noted that in the absence of a statute a debtor has no more right to pay off the obligation prior to its maturity date than he does to pay it off after its maturity date. Inasmuch as prepayment of the loan is a privilege the lender may extract a payment or "penalty" for exercise of the privilege. (*Ibid.*)

■ The second type of prepayment penalty is known as the *option type* and is present in this case. This type occurs when the loan document permits the prepayment of the obligation at the option of the trustor, but on the condition that he pay the specified fee or penalty. Thus, as in the instant case, an option prepayment penalty is one which allows the borrower an "alternative method of performance" under the loan obligation. He can either pay the loan off at its maturity date, paying only the principal and interest, or he may *elect to prepay* the loan in advance of the maturity date and pay a prearranged fee for this privilege. In effect, the borrower is paying a fee for the "nonuse" of the money. Courts have consistently upheld these option prepayment penalty clauses.

Unsuccessful attacks upon the prepayment fee were brought upon the contention that the fee was usurious. (*French* v. *Mortgage Guarantee Co.* (1940) 16 Cal.2d 26 [104 P.2d 655, 130 A.L.R. 67]; *Grall* v. *San Diego Bldg. & Loan Assn.* (1932) 127 Cal.App.250 [15 P.2d 797].) In *Meyers* v. *Home Sav. & Loan Assn.* (1974) 38 Cal.App.3d 544 [113 Cal.Rptr. 358], the court affirmed the order of dismissal after sustaining of demurrers. In *Meyers* the appellant maintained that all prepayment penalty provisions in real estate loan contracts employed by the defendants violated Civil Code section 1670 as a liquidated damage. The court noted that the clause does not penalize for the "breach of an obligation," no breach is involved in the prepayment transaction but rather the exercise of an option given to the debtor for an alternative method of performance. (*Id.*, at p. 546.) The prepayment fee was upheld.

In *Hellbaum* v. *Lytton Sav. & Loan Assn.* (1969) 274 Cal.App.2d 456 [79 Cal.Rptr. 9],[2] the court held that the prepayment fee was not a *forfeiture* or an unreasonable restraint on alienation. The court noted that the lender had a justifiable interest in motivating an intended long-term debtor to refrain from early prepayment of principal and thus the prepayment penalty was allowable. (*Id.*, at p. 459.) There is dicta in the *Hellbaum* decision which suggests that a prepayment penalty may be unenforceable if it is unreasonable or unconscionable. One commentator has stated regarding the *Hellbaum* decision: "However, it is entirely possible that a court, examining a prepayment charge so exorbitant as to shock the judicial conscience and entirely incompatible with customs of the trade, will reject the freedom of contract analysis and

---

[2]Disapproved on other grounds in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 953 [148 Cal.Rptr. 379, 582 P.2d 970].

declare it an invalid penalty." (Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) §§ 4.69-4.78, pp. 193-209, at p. 196.)

Furthermore, *Lazzareschi Inv. Co.* v. *San Francisco Fed. Sav. & Loan Assn.* (1971) 22 Cal.App.3d 303, 308 [99 Cal.Rptr. 417], *assumed* that "palpably exorbitant charges would be subject to defeat by judicial decision." However, the court did not find that the prepayment penalty under scrutiny was exorbitant but rather that it was reasonably related to the costs and inconvenience of the lender and was therefore enforceable.

Appellants have not cited nor have we found any California case which has invalidated an option-type prepayment penalty clause for being unreasonable. It is mere dicta in *Lazzareschi* and *Hellbaum* that there is a limitation of reasonableness on prepayment penalties. Furthermore, it is far more than mere reasonableness that is in question in *Hellbaum*; rather, it is a prepayment charge which must be "so exorbitant as to shock the judicial conscience" and "entirely incompatible with customs of the trade." This is not the case here presented.

Appellants maintain that the 50 percent penalty herein is per se exorbitant and unconscionable. However, as is shown by the declaration of respondents' accountant, an additional payment of approximately $33,000 would be required in order to offset respondent's increased tax liability. An approximate 41 percent prepayment penalty would have been required to produce the additional $33,000. Thus, at the time that the contract was formed an estimated 50 percent penalty fee was a reasonable approximation of the actual percentage found to be required at the time of the intended prepayment. Reasonableness must be tested at the time the contract was formed and not by the benefit of hindsight. The *Lazzareschi* case as well as *Hellbaum* dealt with commercial lenders. The instant case involves a private lender who faces substantial income tax consequences resulting from prepayment. A private lender certainly has a justifiable right in protecting himself against these extremely high tax consequences. This right has been recognized by statute in the case of residential lots containing a dwelling for not more than four families in Civil Code section 2985.6. That statute gives the borrower on such property the qualified right to prepay all or any part of the balance with the exception of the first 12-month period following the sale. This is an apparent reference to the installment sales provision of the income tax laws which allow a seller to defer taxation on a gain on sale of real property if less than 30 percent of the sales price is received in the year of sale.

The cases from other jurisdictions cited by appellants are inapplicable because each one of them involves a default situation. As was noted in *Hellbaum,* the option-type prepayment penalty does not involve a default but rather an alternative means of performance. (*A-Z Servicenter, Inc.* v. *Segall* (1956) 334 Mass. 672 [138 N.E.2d 266]; *In re Mill City Plastics* (D.C.Minn. 1955) 129 F.Supp. 86; *Cissna Loan Co.* v. *Gawley* (1915) 87 Wash. 438 [151 P. 792].)

We are aware that there are statutes which provide a limitation on prepayment penalties enforceable in California under certain types of sales contract. (Civ. Code, § 2954.9, subd. (b); Civ. Code, § 2985.6; Bus. & Prof. Code, § 10242.6.) However, each of these statutes deals with residential real property with less than four units and two of them place the further limitation that the property be owner-occupied. (Civ. Code, § 2954.9, and Bus. & Prof. Code, § 10242.6.)

Appellants have not raised any issue of the applicability of these statutes either in this court or in the proceedings below. At any rate the evidence presented does not seem to bring this case within the scope of the statutory protection.

Although, as we have seen, there is dicta in several cases supporting the concept that a prepayment penalty may be unenforceable if unconscionable, we need not so hold here. ■ We do hold that in a transaction between private parties, an agreement specifying a 50 percent prepayment penalty is valid if the penalty is reasonably related to the obligee's anticipated risk of incurring increased tax liability upon the occurrence of the prepayment. We find this to be the case here. We find no abuse of discretion by the court below.

The judgment is affirmed.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied October 1, 1980, and appellants' petition for a hearing by the Supreme Court was denied October 29, 1980. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.