[No. 53436–5.   En Banc.   June 16, 1988.]

C. BRENT MCCAUSLAND, ET AL, *Respondents,* v. BANKERS LIFE INSURANCE COMPANY OF NEBRASKA, *Appellant.*

L. Ed. 2d 527, 103 S. Ct. 2317 (1983), is unnecessary if "the stricter requirements of the *Aguilar–Spinelli* test" are satisfied).

*Preston, Thorgrimson, Ellis & Holman,* by *John A. Gose* and *Judith A. Bigelow,* for appellant.

*Kane, Vandeberg, Hartinger & Walker,* by *James R. Verellen* and *Gary W. Ross,* for respondents.

*Daniel C. Blom* and *Craig E. Schuman* on behalf of American Council of Life Insurance; *Foster, Pepper & Shefelman,* by *Richard E. Keefe* on behalf of Seattle Mortgage Bankers Association and Washington Mortgage Bankers Association, amici curiae for appellant.

ANDERSEN, J.—

## FACTS OF CASE

This declaratory judgment case raises issues concerning the validity of due–on–sale clauses and prepayment restrictions in commercial real estate financing transactions.

In 1984, appellant Bankers Life Insurance Company (lender), loaned $700,000 to Brent and Colleen McCausland (borrowers) at 13.25% interest for a term of 15 years. This commercial loan provided permanent financing for a retail shopping center owned by the borrowers. The borrowers gave the lender a promissory note and deed of trust. The note provided that no prepayment of principal could be made during the first 7 years of the loan. During the 8th through the 10th year, principal prepayment was permitted if accompanied by a 5% fee. After the 10th year, the note could be prepaid without restriction.

Both the note and deed of trust contained due–on–sale and due–on–encumbrance clauses permitting the lender to declare the entire note payable upon transfer or encumbrance of the property. The lender also had the right to declare the remaining unpaid principal and accrued interest due and payable at the end of the 10th year of the loan's term.

In 1986, 2 years after the loan was made, the borrowers inquired about the possibility of prepaying the note. No sale was involved; the borrowers simply wanted to refinance the loan. Relying on the prepayment restriction, the lender refused prepayment unless the borrowers would agree to pay an additional $115,000, which the lender asserted would be the loss occasioned to it by such a prepayment.

The borrowers then filed this declaratory judgment action seeking a declaration that the prepayment restrictions were invalid. Both parties moved for summary judgment. Relying on *Terry v. Born,* 24 Wn. App. 652, 604 P.2d 504 (1979), the trial court concluded that the prepayment restrictions were an unreasonable restraint on alienation and granted borrowers' motion for summary judgment, but denied their request for attorneys' fees and costs.

The lender then moved to alter or amend the judgment on the basis that the trial court's ruling conflicted with federal law prohibiting state restrictions on due–on–sale clauses. That motion was denied. The lender sought and was granted direct review by this court. The borrowers cross–appeal the denial of attorneys' fees.

Three issues are determinative of this appeal.

## ISSUES

ISSUE ONE. Under the Garn–St Germain Depository Institutions Act of 1982, a federal enactment, are due–on–sale clauses in real estate loan transactions now enforceable in Washington?

ISSUE TWO. Does a 7–year prepayment restriction in a commercial real estate loan constitute an unreasonable restraint on alienation?

Issue Three. Do *both* a due–on–sale clause and a prepayment restriction in a commercial loan transaction combine together to unreasonably restrain alienation?

## Decision

Issue One.

Conclusion. The Garn–St Germain Depository Institutions Act of 1982 preempts prior state law so that due–on–sale clauses are now enforceable in Washington.

In this declaratory judgment action, we are asked to decide whether the combination of a due–on–sale clause with a prepayment restriction in a commercial loan agreement causes an unreasonable restraint on alienation so that we should declare the prepayment prohibition unenforceable. In order to analyze the combination of a due–on–sale clause and a prepayment clause, and their effect on alienation, it is helpful to first separately consider the history and purpose of each clause.

Prior to the federal legislation in question, state courts were divided on the issue of whether due–on–sale (DOS) clauses were reasonable restraints on alienation.[1] In this jurisdiction, DOS clauses were held to be unreasonable restraints on alienation unless the lender could show that the enforcement of the clause was necessary to protect the lender's security.[2] However, the federal Garn–St Germain Depository Institutions Act of 1982 (Garn Act)[3] now preempts state laws that restrict the enforcement of due–on–sale clauses in real property loan cases, thereby making

---

[1] *See Bellingham First Fed. Sav. & Loan Ass'n v. Garrison,* 87 Wn.2d 437, 440, 553 P.2d 1090 (1976) collecting authorities on both sides of this issue.

[2] *Bellingham,* at 441; *Riste v. Eastern Wash. Bible Camp, Inc.,* 25 Wn. App. 299, 301, 605 P.2d 1294 (1980).

[3] The pertinent provisions of the Garn–St Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3, at 841 (1983) provide:

"(b)(1) Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may . . . enter into or enforce a contract containing a due–on–sale clause with respect to a real property loan."

such clauses generally enforceable.[4] We have heretofore recognized that Congress intended to preempt state efforts to regulate the enforcement of DOS provisions in real estate loans.[5] This intent has been made eminently clear:

The purpose of this permanent preemption of state prohibitions on the exercise of due–on–sale clauses by all lenders, whether federally– or state–chartered, is to reaffirm the authority of Federal savings and loan associations to enforce due–on–sale clauses, and to confer on other lenders generally comparable authority with respect to the exercise of such clauses. This part applies to all real property loans, and all lenders making such loans, as those terms are defined in § 591.2 of this part.

12 C.F.R. § 591.1(b)(1987).

There are cogent reasons supporting a uniform national policy enforcing due–on–sale clauses. As the United States Supreme Court has pointed out,

the [savings and loan associations'] practice of borrowing short and lending long . . . combined with rising interest rates, has increased the cost of funds to these institutions and reduced their income. Exercising due–on–sale clauses enables savings and loans to alleviate this problem by replacing long–term, low–yield loans with loans at the prevailing interest rates and thereby to avoid increasing interest rates across the board.

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 168–69, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982). As a recent scholarly treatise further explains,

the enforcement of due–on–sale clauses tends to reduce the discrimination that otherwise exists in favor of those buyers who are fortunate enough to find a low interest loan to assume against those who are forced to obtain new mortgage financing. Indeed, because existing low interest loans have been paid down to some extent, and because of inflation in the value of real estate, those who

---

[4]*See* G. Nelson & D. Whitman, *Real Estate Finance Law* § 5.24 (2d ed. 1985).

[5]*Perry v. Island Sav. & Loan Ass'n,* 101 Wn.2d 795, 802, 684 P.2d 1281 (1984).

are able to assume an existing loan generally will be those who can come up with a significant amount of cash, whereas those who are not so fortunate in this regard will be forced to obtain new financing at higher market interest rates. Thus, to the extent that due–on–sale clauses are not enforced, an inordinate interest rate advantage may be afforded to higher net worth buyers over those who are less fortunate.

G. Nelson & D. Whitman, *Real Estate Finance Law* § 5.21, at 318–19 (2d ed. 1985).

Thus, to the extent DOS clauses are not enforced, buyers unable to assume existing low interest mortgages have to pay artificially inflated interest rates to counterbalance lenders' older below market interest loans. In any event, it is no longer the prerogative of any state to restrict the enforceability of due–on–sale clauses. While the Garn Act did establish a window period phasing in the full enforceability of the Act,[6] all contracts entered into after October 15, 1982 are subject to the Act's mandate of enforceability.[7] Since the date of the loan in the case before us was May 2, 1984, the Garn Act preempts prior state law.

ISSUE TWO.

CONCLUSION. A 7–year prepayment prohibition in a commercial real estate loan agreement does not constitute an unreasonable restraint on alienation.

Recognizing, as we do, that the Garn Act has preempted prior Washington law regarding due–on–sale clauses, the issue becomes to what extent the Garn Act preempts regulation of other real estate financing provisions, specifically, prepayment restrictions? Where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent it actually conflicts with federal law or when state law stands as an obstacle to the

---

[6]12 U.S.C. § 1701j–3(c)(1) (1983).

[7]*Perry,* at 810. *See also* G. Nelson & D. Whitman § 5.4.

accomplishment and execution of the full purposes and objectives of Congress.[8]

The Garn Act clearly intended to preempt prior Washington case law restricting lenders' rights to use due–on–sale clauses, since that prior law directly conflicts with federal law and would stand as an obstacle to the congressional purpose of making such clauses uniformly enforceable. There is no indication in the Garn Act, however, evidencing an intent by Congress to preempt real estate loan provisions other than due–on–sale clauses. As one recent treatise explains, "[t]he Act preempts state law only with respect to due–on–sale clauses that 'authoriz[e] a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent.'" G. Nelson & D. Whitman § 5.24, at 336, citing 12 U.S.C.A. § 1701j–3(a)(1).

We must, therefore, decide whether, under Washington law, a 7–year prepayment restriction violates the public policy of this state because it imposes an unreasonable restraint on alienation. Unreasonable restraints on alienation of real property are, of course, invalid; reasonable restraints on alienation, on the other hand, are valid if justified by the legitimate interests of the parties.[9]

A prepayment penalty or restriction is generally used by a lender to preclude borrowers from refinancing loans in times of declining interest rates.[10] The prepayment restriction usually arises (as it did in this case) in the context of an effort to refinance, although it could arise if a seller

---

[8]*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982).

[9]*Magney v. Lincoln Mut. Sav. Bank*, 34 Wn. App. 45, 51, 659 P.2d 537, *review denied*, 99 Wn.2d 1023 (1983); *Bellingham*, at 439.

[10]G. Nelson & D. Whitman § 6.1, at 423.

wished to prepay a loan in order to convey title free of the security interest.

■ Absent a specific provision in a note, there is no common law right to pay off a debt prior to its maturity.[11] Washington law has long followed the common law principle that a lender is not obligated to accept prepayment of a loan which was set for a specific period.[12]

In an analogous situation, the Oregon Supreme Court held that a mortgage note provision which prohibited a complete payoff for 11 years was not an unreasonable restraint upon alienation.[13] That court reasoned that the only restraint on the borrowers was their inability to refinance and pay off the encumbrance. "There is an expense attached to loaning money on real property, and it is an entirely legitimate aim of purveyors of credit to loan it for a length of time and at a rate of interest which guarantee a certain net return on the management of the money."[14]

There are basically two types of prepayment clauses commonly found in real estate loans.[15] One type, an option clause, involves a specific penalty for the privilege of prepaying. The other, which is involved here, is a nonoption clause that arises when the contract constitutes a locked–in loan that prevents all prepayment rights for a set period of time. As a California court recently explained, "[w]hen the trustor requests permission to repay the loan, or a part of it, before it becomes due, the lender can negotiate the

---

[11]G. Nelson & D. Whitman § 6.1; *Williams v. Fassler,* 110 Cal. App. 3d 7, 167 Cal. Rptr. 545 (1980).

[12]*Pedersen v. Fisher,* 139 Wash. 28, 245 P. 30 (1926); *Cook v. Washington Mut. Sav. Bank,* 143 Wash. 145, 152, 254 P. 834 (1927).

[13]*Hartford Life Ins. Co. v. Randall,* 283 Or. 297, 583 P.2d 1126 (1978).

[14]*Hartford,* at 300–01.

[15]*Williams,* at 10–11.

charge he will accept in return for consenting to the pre-payment."[16] That court, finding that the lender had a justifiable interest in motivating an intended long–term debtor to refrain from early prepayment of principle, held that prepayment is a privilege and the lender may extract a payment for the exercise of such privilege.[17] The court also noted that, in the absence of statute, a debtor has no more right to pay off the obligation prior to its maturity date than it does to pay it off after its maturity date.[18]

The borrowers argue, however, that an absolute restriction on prepayment for 7 years is unnecessarily restrictive and that some penalty provision could effectively protect the lender's interests. Conceivably a prepayment fee or formula could achieve that result while leaving a borrower greater flexibility to refinance. However, this court does not deem it appropriate to forbid prepayment restrictions on public policy grounds in order to protect commercial borrowers who, in most cases, are well able to bargain on their own with lenders who have a potential economic advantage. Our imposition of any such prohibition could well have serious consequences on the availability of commercial loans in Washington and on the salability of Washington loans on the secondary mortgage market.

If there is a need for regulations to be imposed in commercial loans regarding the amount of prepayment penalties that can be demanded, that subject is more appropriately addressed to the Legislature. As another California court observed in that regard,

> the control of charges, if it be desirable, is better accomplished by statute . . . than by *ad hoc* decisions of the courts. . . . [I]nstitutions which lend vast sums of money should be informed, not by judgments after the facts on a case–to–case basis, but by laws or regulations which are

---

[16]*Williams,* at 10.

[17]*Williams,* at 10–11. *See also* G. Nelson & D. Whitman § 6.1, at 422.

[18]*Williams,* at 10. *See also* G. Nelson & D. Whitman § 6.1, at 421–22.

in existence in advance of the undertaking to execute loans, of the validity or invalidity of terms that are commonly used.

*Lazzareschi Inv. Co. v. San Francisco Fed. Sav. & Loan Ass'n,* 22 Cal. App. 3d 303, 311, 99 Cal. Rptr. 417 (1971).[19] We agree.

Some kind of prepayment provision is obviously of great importance to commercial lenders who rely on the fixed interest due on their long–term loans. The commercial borrowers in this case were on notice that they were restricted from retiring their loan prior to maturity unless they could reach an understanding with the lender on the matter. There is no allegation of fraud or overreaching in this case and the provisions in question were clearly set forth in both the loan papers and the commitment letter signed by borrowers.

Accordingly, we decline to hold that prepayment restrictions in commercial loans of the nature involved here violate public policy by unreasonably restraining alienation of real property. Such prohibitions do not preclude borrowers from selling their property although it may preclude them from refinancing their loan.

ISSUE THREE.

CONCLUSION. We also conclude that the combination of a due–on–sale clause with a prepayment prohibition clause does not violate public policy by unreasonably restraining alienation.

Having examined the nature of both due–on–sale clauses and prepayment restrictions, the issue is then presented as to how these two provisions operate together in one loan instrument, and whether such a combination unreasonably restrains the alienation of real estate.

---

[19]Although legislation has limited prepayment restrictions and penalties in some jurisdictions, such legislation has been limited to loans secured by *residential* property and has not attempted to regulate prepayment clauses in nonresidential loan transactions. G. Nelson & D. Whitman, *Real Estate Finance Law* § 6.4 (2d ed. 1985).

■ The most important consideration in this regard is that these two clauses do not operate simultaneously. As the lender here concedes, if it elects upon sale or encumbrance to accelerate the debt, it may *not* demand any prepayment penalty. This is correct, because payment after acceleration is not prepayment. As this court long ago explained,

> [o]f course, if the indebtedness is payable on or before some specified date, or the creditor has the right to so elect, and exercising such right elects an earlier date, then the date of his election becomes the maturity date, on or after which effective tender may be made by the debtor of principal and *interest up to date of tender.*

(Italics ours.) *Pedersen v. Fisher,* 139 Wash. 28, 33, 245 P. 30 (1926). Contemporary commentators agree that this is sound policy.[20] If a lender elects to accelerate the debt upon sale because interest rates have increased, the lender should not also be allowed to collect a prepayment fee. The function of the prepayment fee or prohibition is to protect lenders from borrower refinancing in times of falling interest rates and should not be used to penalize borrowers who refuse to accept lender's increased interest rates at resale in times of rising rates.[21] It is only fair that the lender be prohibited from demanding prepayment fees upon acceleration of the debt since, in that instance, it is the lender who is insisting on prepayment.

The two provisions, rather than working contemporaneously, are used as economic complements to one another. While the *due–on–sale clause* enables a lender to require early payment of lower than market interest rate loans, the *prepayment penalty* is used to discourage refinancing by the borrower when market interest rates fall below the rate

---

[20]G. Nelson & D. Whitman § 6.5.

[21]*See* Cohen, *Judicial Treatment of the Due–on–Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability,* 27 Stan. L. Rev. 1109, 1130 (1975).

on the borrower's existing loan.[22] The two provisions, therefore, are used by lenders to achieve different goals. Both are at least arguably necessary to protect a lender's long–term loan portfolio.

The trial court in this case, in concluding that the pre-payment prohibition combined with the due–on–sale clause unreasonably restrained alienation, relied primarily on the Court of Appeals decision in *Terry v. Born*, 24 Wn. App. 652, 604 P.2d 504 (1979). Such reliance is misplaced. In *Terry*, the real estate contract prohibited any assignment or conveyance and also flatly prohibited prepayment. It also provided for forfeiture in case of assignment. A complete, direct restraint on alienation is distinguishable from a due–on–sale clause which only requires payment of the loan upon sale. Additionally, *Terry* relied on the decision in *Bellingham First Fed. Sav. & Loan Ass'n v. Garrison*, 87 Wn.2d 437, 553 P.2d 1090 (1976) which made due–on–sale clauses largely unenforceable in Washington. Since the enactment of the Garn Act by Congress, *Bellingham* no longer declares state law regarding DOS clauses. More recently, in discussing *Terry*, we pointed out that a due–on–sale clause is not even similar to the prohibition on assignment clause found in the contract the Court of Appeals had before it in *Terry*. *Morris v. Woodside*, 101 Wn.2d 812, 818, 682 P.2d 905 (1984). As we there observed, "[t]his due–on–sale clause does not prohibit conveyance, assignment or prepayment." *Morris*, at 818. The *Terry* court recognized that by prohibiting prepayment, the lender has an additional interest in receiving installment payments over a fixed period of time. *Terry*, at 655.

To allow the trial court's decision in this case to stand would allow all borrowers to refinance their loans (which many would doubtless do if market interest rates fell below their loan rates) with no prepayment penalty. The converse

---

[22]G. Nelson & D. Whitman § 6.1, at 423.

of this, however, is not true. Lenders could not require borrowers to refinance their loans if market interest rates became higher than the loan interest rates.

We do not perceive it to be sound judicial policy to require lenders to choose between due–on–sale clauses and prepayment restrictions since they serve different interests. The clauses in question provide a means of allocating risks in a period of fluctuating interest rates. By enforcing them, the court is carrying out the parties' own allocation of the commercial risks involved. Prohibiting prepayment restrictions, but allowing for prepayment penalties through the use of prescribed fees or formulas, is a device better suited to determination by negotiation between the parties or, if necessary, for the Legislature which has the power to hold public hearings before enacting legislation.

The borrower has cross–appealed the issue of the trial court's refusal to award attorneys' fees and the lender has argued that such cross appeal was not timely. Because we reverse the trial court's decision, neither of these issues need be addressed. No attorneys' fees are awarded.

Reversed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied August 17, 1988.