[No. 42606-1-I.    Division One.    June 21, 1999.]

ANTHONY B. GEORGE, ET AL., *Respondents*, v. DON L. FOWLER, *Appellant*.

---

[71]*Id.*

*Alan Lee Froelich*, for appellant.
*Charles B. Jackson*, for respondents.

BECKER, J. — Absent evidence of fraud or overreaching, a court should not exercise its equitable powers to invalidate a no-prepayment provision in a private real estate contract. In this case, the buyers sought relief from a 30-year note containing a no-prepayment clause. The trial court reformed the note to allow the buyers to accelerate payment upon resale. We reverse, and order that the no-prepayment clause be enforced.

In September, 1990, Anthony and Jacqueline George purchased property on Orcas Island from Don Fowler. The Georges agreed to pay the sale price of $235,000. They offered to pay Fowler $50,000 cash and to sign a promissory note for the balance. The note they proposed was for $185,000 at 10.25 percent interest, with equal monthly installments of $1,657.79 or more at purchaser's option.

Fowler accepted the purchase offer, but struck the "or more at purchaser's option" language because he wanted to secure a steady and predictable stream of monthly income over the life of the note. The Georges knew that Fowler had struck the language. They agreed to Fowler's terms.

The note sets up a monthly payment plan lasting for 30 years. The note states: "There shall be no prepayment." The note does not prohibit the Georges from reselling the property before the note is fully paid, but it does reserve to Fowler the right to approve the financial status of prospective purchasers. A due-on sale clause permits Fowler to accelerate payment if the Georges sell the property without his approval. "Until this Note is paid in full, on the occasion of a subsequent sale of the property that this Note is given for, the holders shall have the right to approve the financial status of the prospective Purchasers of the property. The holders approval shall not be unreasonably withheld. In the event that the makers of this Note and/or the prospective Purchasers do not obtain holders approval of the sale, the entire outstanding balance of principal and interest due under this Note shall be due in full at the time of the closing of the sale of the property."

About four years after buying the property, the Georges sought Fowler's permission to pay off the entire balance with interest accrued to date. Fowler refused. The Georges sued for declaratory relief. The trial court summarily dismissed all of the Georges' claims except for their allegation that the provisions in the note constituted an unreasonable restraint on alienation.

After a bench trial on a stipulated record, the trial court ruled that the provision requiring payment of interest for the 30-year life of the note, together with the due-on-sale clause, constituted an unreasonable restraint on alienation. The court granted declaratory relief to the Georges, reforming the note so that upon selling the property to another party they would be entitled to pay off the full amount of the remaining principal, along with interest to date. Fowler appeals from the judgment and accompanying award of attorney fees.

The trial court based its ruling primarily on *Terry v. Born*, 24 Wn. App. 652, 604 P.2d 504 (1979). We hold that *McCausland v. Bankers Life Ins. Co.*, 110 Wn.2d 716, 757 P.2d 941, 81 A.L.R.4TH 411 (1988), not *Terry*, is the controlling precedent. The *McCausland* court directly addressed an argument that a no-prepayment clause is an unreasonable restraint on alienation. *McCausland* rejects the argument in the context of a commercial loan. The note in *McCausland* prohibited prepayment for seven years. After the seven years, prepayment was permitted but penalized with a fee. The note also provided a due-on-sale clause permitting the lender to declare the entire note payable upon transfer or encumbrance of the property. Two years after the McCauslands signed the promissory note, they sought to prepay the note so that they could refinance the loan. The lender refused to allow prepayment unless the McCauslands paid a penalty. The McCauslands filed suit claiming that the provisions constituted an unreasonable restraint on alienation. The trial court ruled in their favor. In reversing the trial court, the Supreme Court separately discussed the validity of a due-on-sale clause and a no-prepayment clause in a commercial loan.

The court first declared that the Garn-St. Germain Depository Institutions Act of 1982 preempts state law so that any lender's use of a due-on-sale clause is enforceable. *McCausland*, 110 Wn.2d at 720. The court then held that the Garn Act did not preempt state law governing restrictions on prepayment, and proceeded to consider whether, under state law, the seven-year prepayment prohibition was an unreasonable restraint on alienation. The court found it was not. *McCausland*, 110 Wn.2d at 722. "Absent a specific provision in a note, there is no common law right to pay off a debt prior to its maturity." *Id*. at 723. The court observed that lenders use prepayment restrictions to preclude borrowers from refinancing loans in times of declining interest rates. The court recognized that such restrictions may preclude borrowers from refinancing and paying off the encumbrance, but do not preclude them from selling their

property. *Id.* (citing *Hartford Life Ins. Co. v. Randall*, 283 Or. 297, 583 P.2d 1126 (1978)).

Because prepayment is a privilege, a lender may extract a payment for exercise of such privilege. *McCausland*, 110 Wn.2d at 723 (citing *Williams v. Fassler*, 110 Cal. App. 3d 7, 167 Cal. Rptr. 545 (1980)). But even an absolute prohibition against prepayment will not be invalidated as unduly restrictive. A lender's interest in guaranteeing a certain net return by loaning money at a particular interest rate for a specific length of time is entirely legitimate.

> Conceivably a prepayment fee or formula could achieve that result while leaving a borrower greater flexibility to refinance. However, this court does not deem it appropriate to forbid prepayment restrictions on public policy grounds in order to protect commercial borrowers who, in most cases, are well able to bargain on their own with lenders who have a potential economic advantage. Our imposition of any such prohibition could well have serious consequences on the availability of commercial loans in Washington and on the salability of Washington loans on the secondary mortgage market.
>
> If there is a need for regulations to be imposed in commercial loans regarding the amount of prepayment penalties that can be demanded, that subject is more appropriately addressed to the Legislature.

*McCausland*, 110 Wn.2d at 724.

The *McCausland* court also concluded that the seven-year no-prepayment clause did not create an unreasonable restraint against alienation when combined with the due-on-sale clause. Central to the court's rationale was that the two clauses did not operate simultaneously. *Id.* at 726. Instead, they are "economic complements" used by lenders to achieve different goals. *Id.* The due-on-sale clause enables a lender to require early payment of lower than market interest rate loans, while the prepayment restriction is used to discourage refinancing by the borrower when interest rates fall below the rate provisions. "Both

are at least arguably necessary to protect a lender's long-term loan portfolio." *Id.* at 727.

The court noted that if it were to invalidate the provision prohibiting prepayment, borrowers would be able to refinance their loans with no penalty if the market interest fell below their loan rate. This outcome would be unfair to lenders because the converse was not true: "Lenders could not require borrowers to refinance their loans if market interest rates became higher than the loan interest rates." *Id.* at 728.

The trial court in the present case distinguished *Mc-Causland* because the loan there was commercial in nature and the prohibition on prepayment endured for only seven years. But there is even less reason to invalidate a no-prepayment provision in a contract between private parties. As the court said in *Morris v. Woodside*, 101 Wn.2d 812, 817, 682 P.2d 905 (1984), the parties to a private real estate loan are unlike the parties to a commercial loan in that they have equal bargaining power and can negotiate over the terms of the loan.

As for the duration of the prepayment restriction, there is no time limit in the common law rule stated in *Mc-Causland*: a debtor does not have the right to pay off an obligation prior to its maturity date. We have found no authority for discarding this rule when the term of the prepayment restriction is 30 years instead of 7.

These are private parties. There is no evidence of fraud, overreaching, or inequality in bargaining power. What motivated each party to agree on the specific terms of their contract is unknown to the court. Perhaps the Georges accepted the no-prepayment restriction because they were unable to obtain financing except on Fowler's terms. Perhaps Fowler could have sold the property at a higher price if he had not insisted on prohibiting prepayment. It is not the role of the courts to second guess such considerations and make a new contract for the parties. Our authority extends only to enforcing the contract the parties have made for themselves. *See Foster v. Knutson*, 84 Wn.2d 538,

545, 527 P.2d 1108 (1974). The trial court erred in reforming the George-Fowler note, and must now enforce it as written.

## CROSS-APPEAL

The Georges cross-appeal, contending that the court must look to extrinsic evidence of the parties' intent because the note is ambiguous and contradictory. This claim is without merit. The only claimed ambiguity is the absence of a provision stating the duration of the note. But it is undisputed that the note is for 30 years. And even if there were an ambiguity with respect to the duration, it would not require opening up every other term in the note to interpretation by the court.

The Georges contend that the no-prepayment restriction contradicts the due-on-sale clause, but as discussed in *McCausland*, these two provisions do not act simultaneously. The due-on-sale clause protects Fowler's security in the event that the Georges sell the property to an uncreditworthy buyer without Fowler's consent. The no-prepayment clause protects Fowler's interest in a steady and predictable income stream. There is no contradiction that requires judicial resolution.

## ATTORNEY FEES

In reversing judgment, we also reverse the award of fees to the Georges. On remand, the trial court is directed to enter judgment in favor of Fowler, and to award Fowler his attorney fees incurred both at trial and on appeal. *See* RAP 18.1; *see also West Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985) (a contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1.).

Reversed.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied August 23, 1999.

Review denied at 139 Wn.2d 1024 (2000).