[No. 54477–8.   En Banc.   July 15, 1988.]

S. MICHAEL RODGERS, ET AL, *Respondents,* v. RAINIER NATIONAL BANK, *as Trustee, Appellant.*

---

[29]See footnote 19.

*Carney, Stephenson, Badley, Smith, Mueller & Spellman, P.S.,* by *Sylvia Luppert* and *William M. Wood,* for appellant.

*Preston, Thorgrimson, Ellis & Holman,* by *John A. Gose* and *Judith A. Bigelow,* for respondents.

BRACHTENBACH, J.—Debtors on a promissory note defaulted and the lender accelerated the maturity date pursuant to a default–acceleration provision. As a requirement for the debtor to avoid foreclosure sale, the lender demanded *unaccrued* interest for the period during which prepayment was prohibited, and also demanded a prepayment penalty which would have been due had prepayment occurred subsequent to that prohibition period. The question presented is whether the debtors can recover the unaccrued interest and the prepayment penalty which they paid under protest. The trial court answered in the affirmative and we agree.

Resolution of the issues is narrowly circumscribed by debtor's position that he "does not dispute that properly drawn prepayment provisions in loan documents are enforceable in the event of prepayment." Brief of Respondent, at 11. Since there is no challenge to the validity or enforceability of a prepayment fee under these facts, our analysis is restricted to an interpretation and application of the specific terms of this particular note to these particular facts.

This transaction arose from the financing of a commercial property owned by debtors. Rainier National Bank, acting as trustee for the Carpenters' Retirement Fund of Western Washington, agreed in a commitment letter to lend $1,312,000 to debtors. The transaction resulted in a promissory note secured by a deed of trust on the commercial property.

The note provided for interest at 13 percent per annum, principal and interest payable in monthly installments, due in full at the end of 10 years. The relevant note provisions are:

6. Prepayment

(a) This Note may not be prepaid in whole or in part (except to the extent of the regular monthly payments) during the first four loan years. Thereafter, the loan may only be prepaid in full and only by paying a prepayment fee. The prepayment fee shall be 5% during the fifth loan year and shall be reduced by 1% each loan year until such premium is 1%, which shall be the prepayment fee for the balance of the loan, except for the last month of the loan, at which time there shall be no prepayment premium.

Clerk's Papers, at 58.

7. Default

If any payment of principal or interest is not paid when due, or in the event of any default in the performance of any of the terms of this Note or the Loan Documents, then the entire principal sum and *accrued* interest shall at once become due and payable at the option of the holder of this Note, . . .

(Italics ours.) Clerk's Papers, at 59.

The note was dated January 31, 1984, and debtors made monthly payments from February 1984 through April 1986. In a letter dated March 31, 1986, debtor's attorney expressed to trustee a desire to gain a reduction in the interest rate to facilitate a possible sale of the secured property. Trustee declined any modification. Thereafter debtors stopped monthly payments. Other than the March letter there is no explanation in the record of the reasons for default. In October 1986 lender sent borrowers notice of nonjudicial foreclosure and sale. The lender informed the borrowers they could reinstate the loan if by February 9, 1987, they paid the delinquent payments plus costs, but after February 9 they would be required to pay total principal plus accrued interest as well as unpaid and unaccrued interest charges for the first 4 years of the loan term during which prepayment was prohibited.

After the time to cure the claimed defaults, but before sale, debtor tendered unpaid principal plus accrued interest and costs. The trustee rejected the tender and additionally demanded the unaccrued interest through the first 4 loan years, and, for the first time, the 5 percent prepayment fee due for prepayment in the fifth year. In summary, the trustee demanded (1) principal in full, (2) interest to the date of payment of the principal sum, (3) costs and fees due for foreclosure proceedings, (4) interest from the date of tender of full payment of principal to the end of the fourth loan year and (5) the prepayment fee which would have been due upon prepayment during the fifth loan year. Debtor's challenge is to items 4 and 5.

Debtor paid the full amount demanded, paying items 4 and 5 under protest, received a full reconveyance from trustee and brought this suit. The trial court granted a partial summary judgment in debtor's favor in the sum of $205,637.78, plus pre– and post–judgment interest. No ruling was made on attorney fees or on a claimed violation of RCW 19.86. The calculations used to arrive at the judgment amount are not clear from the record, but neither party disputes in this appeal the sum awarded.

At the outset we must note that a number of assertions which might be relevant are not supported by this record. It is urged that the documents were drawn by the lender, the debtors were sophisticated borrowers, and that both parties were represented by competent counsel. It is urged that the default was deliberate, purposeful and intentional. Rainier describes the debtors' actions as a sophisticated orchestration to avoid their contractual obligations. The record does not disclose anything about the debtors other than the husband was an attorney. We do not know whether either party was represented by counsel. We do not know who drew the papers; both counsel stated in oral argument that neither of their firms had prepared the documents. Other than the March letter expressing an interest in a payoff or refinancing, the record is silent as to the reasons and circumstances of default. We know that the debtors refinanced for a greater amount than due Rainier, but

there is nothing in the record to show why or on what terms. Consequently there are present here no elements of economic coercion, unwritten intent of the parties or reliance and we need not consider the relevance or consequence of such elements.

█ It is clear from the record that the Carpenters' Trust desired and needed the fixed return on its money for a set period of time. Unfortunately for the Trust the clear terms of the note do not provide the desired result. We are limited by this record to an interpretation and application of the unambiguous terms of the promissory note. That note prohibits prepayment during the first 4 loan years. However, it does not specifically provide for payment of interest for the entire 4 years if there is a default and acceleration during those 4 years. It provides for a prepayment fee in the fifth loan year, but it does not specifically provide that the fifth year prepayment fee becomes due when there is default and acceleration before the fifth loan year.

What the note does provide is an *option* for the lender, in the event of default, to declare due and payable the entire principal sum and *accrued* interest. The lender unilaterally chose to exercise that option and in so doing negated the prohibition against prepayment and obliterated the fifth loan year prepayment fee. The inevitable factual and legal consequence of lender's acceleration was to establish a new maturity date, *i.e.,* unpaid principal and accrued interest were due and payable *now.*

Washington follows the common law rule that a lender is not obligated to accept prepayment of a loan prior to its maturity date. *Pedersen v. Fisher,* 139 Wash. 28, 245 P. 30 (1926). Prepayment fees or penalties which are not unconscionable are generally enforceable. *McCausland v. Bankers Life Ins. Co.,* 110 Wn.2d 716, 757 P.2d 941 (1988); *In re LHD Realty Corp.,* 726 F.2d 327, 330 (7th Cir. 1984).

However, a lender may lose its right to a prepayment penalty by accelerating the maturity date of the debt. We agree with the analysis of *LHD Realty Corp.,* at 330–31.

There are, however, some limitations upon the right to receive a prepayment premium. For one, the lender loses

its right to a premium when it elects to accelerate the debt. *Slevin Container Corp. v. Provident Federal Savings & Loan Ass'n,* 98 Ill.App.3d 646, 54 Ill.Dec. 189, 424 N.E.2d 939 (1981). This is so because acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity.

(Footnote omitted.)

In discussing prepayment fees after acceleration, the court in *General Motors Acceptance Corp. v. Uresti,* 553 S.W.2d 660, 663 (Tex. Civ. App. 1977) explained:

"Prepayment" is a payment *before* maturity. "Acceleration" is a change in the date of maturity from the future to the present. Once the maturity date is accelerated to the present, it is no longer possible to prepay the debt before maturity. Any payment made after acceleration of the maturity date is made *after* maturity, not before.

(Citations omitted.)

Lender argues that debtors intentionally defaulted thereby forcing an acceleration, and therefore, such acceleration should not negate the prepayment penalty. There are several defects in lender's argument. Other than the letter from debtors' attorney indicating a desire to pay off or renegotiate the interest rate, there is no proof of the debtors' motivation for default. Even if that sparse bit of proof supported lender's premise, it is clear that lender was not forced to accelerate. Rather, it elected to accelerate. It could have sought monthly payments as they fell due, plus attorney fees and costs. Undoubtedly this would quickly dissuade a voluntary defaulter from continuing to withhold payments. Alternatively, it could have allowed the debt to mature through the fourth loan year and collected the interest for the entire period in which prepayment was prohibited. These alternatives might well be cumbersome and less attractive, but the note did not provide enforceable alternatives. Even assuming the Rodgers' default was purposeful, the loan documents failed to provide for a prepayment charge incident to acceleration upon default. The default, whatever its motivation, was not the action which

accelerated the maturity date of the note. It was the lender's election to accelerate which invoked the terms of the default/acceleration clause of the note. That clause only provided for payment of principal and *accrued* interest.

In an analogous situation the Illinois court observed:

> [The lender] argues that it was [the borrower] who forced or compelled acceleration of the maturity date because of its decision to sell the premises. However, what [the borrower] . . . did or did not do about selling the premises was not the action which accelerated the maturity date of the note. That result was solely the decision of [the lender], since if it so elected the mortgage payments could have been continued as in the past.

*Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n,* 98 Ill. App. 3d 646, 648, 424 N.E.2d 939 (1981).

In accord is *George H. Nutman, Inc. v. Aetna Business Credit, Inc.,* 115 Misc. 2d 168, 169, 453 N.Y.S.2d 586 (1982):

> The question presented herein is whether the mortgagee, after electing to accelerate the mortgage because of a default, can still exact a prepayment penalty because of the premature termination of the mortgage. The court determines that it cannot.
>
> The election by the mortgagee herein to accelerate the mortgage and to treat the mortgage debt as due was not a voluntary act by the mortgagor sufficient to bring the prepayment penalty into operation. . . .

In summary, this promissory note does not provide for any penalty incident to an acceleration upon default. The court cannot supply a provision which the parties omitted.

The trial court is affirmed. The matter is remanded for a determination of attorney fees and costs, including those on appeal.

PEARSON, C.J., and UTTER, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied September 14, 1988.