557 So.2d 596 (1990)
FLORIDA NATIONAL BANK OF MIAMI F/K/a Florida Bank at Fort Lauderdale, As Trustee, under Trust Dated March 15, 1968, Known As Trust No. Lt-0069, and Edwin F. Gordon, a Single Man, Appellants,
v.
BANKATLANTIC, a Federal Savings Bank F/K/a Atlantic Federal Savings and Loan Association of Fort Lauderdale, Appellee.
No. 88-1387.
District Court of Appeal of Florida, Fourth District.
January 31, 1990.
Rehearing and Rehearing Denied March 30, 1990.
*597 David D. Welch of Welch and Korthals, Pompano Beach, for appellants.
Carol Soret Cope and Thomasina H. Williams of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, for appellee.
Rehearing and Rehearing En Banc Denied March 30, 1990.
POLEN, Judge.
This case of first impression asks this court to examine the juxtaposition of the two concepts of (1) a provision for acceleration of due date and (2) prepayment penalties arising from a borrower defaulting on a promissory note secured by a mortgage in a commercial venture. Does the actualization of the former provision automatically preclude entitlement under the latter or should courts have the discretion to address equitable considerations in the proceeding? We hold that, dependent on the facts of a given case, a court in equity can apply both provisions.
This transaction arose from the financing of a commercial venture, an apartment building, with a promissory note secured by a deed of trust on the property. The note provided the standard lender's option of acceleration upon default as well as providing that if the borrower chose to prepay more than twenty percent of the outstanding principal in one year, a prepayment penalty in the form of additional interest would attach. No "yield maintenance" clause[1] was provided. After the borrower defaulted, the lender accelerated the maturity date of the note and also demanded the prepayment penalty fee. The borrower contended the acceleration automatically *598 precluded a claim for prepayment penalty fees. The trial court disagreed and considered the equities involved.
The borrower initially obtained a construction loan in 1963 to build an apartment project, as a tax shelter. After completion of construction in 1976, the borrower executed a note and mortgage, turning the construction loan into a permanent loan due June 1, 2001. In 1982, the borrower found a buyer for the complex as a condominium conversion and stopped leasing the apartments as rentals. The deal was not consummated and the borrower continued to pursue and negotiate with several prospective buyers for the property. The borrower's check for the April 1984 mortgage payment bounced and the monies were never paid. On May 11, 1984, he inquired as to the possibility of waiver of the prepayment penalty fee if he brought a prospective buyer to the bank thereby assuring the bank the end loan. The bank declined to offer the waiver. Thereafter the borrower stopped the monthly payments. The borrower never apprised the bank of any financial hardships or attempted to negotiate alternative means of payment of the monthly charges. The lender sent the borrower notice of the defaults, filed notice of foreclosure and accelerated the note.
During pendency of foreclosure the borrower entered into a $13.5 million sales agreement on the property. At that point the borrower again requested the bank waive the prepayment fee. Pursuant to an agreement between the borrower and the bank, the bank abated the foreclosure proceeding, permitted consummation of the sale and payoff of the $3.5 million loan and the borrower placed monies in an escrow account to cover the amount of the prepayment penalty fee until the matter could be legally resolved. The trial court found the default was a deliberate, purposeful and intentional attempt to avoid the contractual obligations under the note. The borrower did not default until after negotiations for the sale of the building had begun and after the bank refused his request for waiver of the prepayment penalty fee. The bank's foreclosure action had nothing to do with the borrower's prepayment of the note. The bank was forced to institute a foreclosure action to protect its interest in the property, which looked to be endangered due to the default in payment, and to avoid bringing a separate action each month to enforce the note. The trial court stated that such an alternative would be "illogical, irrational and would certainly clog the Court's docket and would amount to an unnecessary expense of judicial resources." Prepayment was due to consummation of a sale planned for some time. Therefore, the borrower was liable for the prepayment penalty fee.
We affirm the trial court's finding of an intentional default. Opinions differ as to whether the court, in an equitable proceeding, should consider the issue of intentional default. We endorse the general rule that unless otherwise specifically provided for in the note, the lender cannot upon the lender's acceleration also collect the prepayment penalty. Such a rule is based on the premise that it was the lender's voluntary choice of exercising the option to collect full payment now, rather than waiting, that accelerated the maturity date of the loan. Rodgers v. Rainier National Bank, 111 Wash.2d 232, 757 P.2d 976 (1988) (emphasis added). However, it is axiomatic that a party to a contract should not profit from his own intentional default. Waters v. Key Colony East, Inc., 345 So.2d 367 (Fla. 3d DCA 1977). We feel that courts should deal with the difficulty of intentional defaults by denying the acceleration exception and finding liability for the prepayment penalty in appropriate cases. See Matter of LHD Realty Corp., 726 F.2d 327 (7th Cir.1984). In commercial settings, under scenarios such as the instant case, courts should be allotted the discretion to consider the question of timeliness of default, the voluntary nature of the tender of full payment of the note and the involuntary nature of the lender's action to accelerate the note and make exceptions to the general rule. The trial court weighed these considerations and we affirm its finding of liability. However, we certify the following question to the supreme court as being one of great public importance:

*599 WHETHER IN COMMERCIAL VENTURES, WHERE THE NOTE CONTAINS BOTH A PROVISION FOR ACCELERATION AND A PROVISION FOR PREPAYMENT PENALTY FEES, AND THE MORTGAGEE HAS ELECTED TO ACCELERATE THE MORTGAGE BECAUSE OF AN INTENTIONAL DEFAULT BY THE MORTGAGOR, WHO SUBSEQUENT TO NOTIFICATION OF FORECLOSURE PROCEEDINGS BUT PRIOR TO A FORECLOSURE SALE, HAS CONSUMMATED A PRIVATE SALE OF THE PROPERTY, IS IT WITHIN THE COURT'S DISCRETIONARY POWER TO CONSIDER THE EQUITIES AND ALLOW BOTH PROVISIONS TO BE EFFECTUATED SIMULTANEOUSLY DUE TO THE PREMATURE TERMINATION OF THE MORTGAGE?
DOWNEY, J., concurs.
STONE, J., concurs specially with opinion.
STONE, Judge, concurring specially.
I concur separately only to emphasize that Gordon's default was found to be deliberate, pursuant to a plan, and for the purpose of avoiding the prepayment penalty. He never responded to the lender's action. Rather, Gordon proceeded with the pending sale. AS a result, he received over thirteen million dollars, paid Bankatlantic three and one-half million, and obtained a satisfaction of mortgage in exchange for escrowing the two hundred fifty thousand dollars in dispute. This litigation concerns only the escrowed sum.
The fact finder concluded that the prepayment was a totally voluntary act and was not in reliance on, or caused by, the bank's acceleration. The trial court's findings have support in the record. Simply because the lender blinked first, I cannot say that the payment must be deemed, per se, "involuntary".
NOTES
[1] A "yield maintenance" clause in a note is a mechanism designed to insure receipt of the prepayment penalty premium whether or not the prepayment is voluntary. Many commercial borrowers sought to prepay high interest loans without a prepayment charge by simply defaulting and forcing the lender to accelerate the loan. The borrower could then prepay without any premium and the lender loses the benefit of its contracted interest rate yield. With a "yield maintenance" clause, the borrower cannot evade the contracted rate. See the SB 939 (1987) and SB 10E (1988) Senate Staff Analysis and Impact Statements and the SB 939 House of Representatives Committee On Commerce Final Staff Analysis for further discussion of the subject.