Argued and submitted April 16, 1999, reversed and remanded March 1, 2000

David Lee CAREY
and Tanja Marie Carey,
husband and wife,
*Respondents,*

*v.*

LINCOLN LOAN CO.,
an Oregon corporation,
*Appellant.*

(9706-04753; CA A100968)

998 P2d 724

Steven E. Benson argued the cause and filed the briefs for appellant.

John M. Berman argued the cause for respondents. With him on the brief was Damon J. Petticord.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

**HASELTON, J.**

Defendant Lincoln Loan Company appeals, assigning error to the trial court's allowance of plaintiffs' motion for summary judgment on their claims for declaratory relief and to the court's related award of attorney fees.[1] The trial court concluded that the maximum prepayment restriction of the parties' land sale contract was unenforceable as violating ORS 82.170 and that, alternatively, the combination of that prepayment restriction and the contract's restrictions on assignment violated public policy as effecting an impermissible restraint on the alienability of real property. We conclude that the trial court erred in both of those alternative rationales and, accordingly, reverse and remand.

For purposes of this appeal, the following facts are uncontroverted: On June 14, 1990, the parties entered into a land sale contract by which plaintiffs agreed to purchase from defendant a home in North Portland. Defendant provided the contract, a preprinted Stevens-Ness form entitled "Contract-Real Estate." On that form, defendant had added the following pertinent provisions:

"This agreement is personal by and between the parties hereto *and cannot be sold, assigned or hypothecated without written consent of first party [defendant].*

"The purchase price of $16,793.06 to be paid in monthly installments of not less than $225/mo including interest at the rate of twelve per cent per annum on the unpaid principal balance, said payments to be made on or before the 30th of each and every month beginning with the month of June, 1990 and continuing until the sum of $16,793.06 together with interest thereon has been paid in full.

"In addition to be [*sic*] above monthly payments, second party [plaintiffs] shall pay taxes and insurance premiums,

---

[1] After submission of the case following oral argument, we determined that the judgment from which the appeal was taken did not adjudicate certain counterclaims, was not entered pursuant to ORCP 67 B, and, thus, was not an appealable judgment. Accordingly, we granted the trial court leave pursuant to ORS 19.270(4) to enter either a Rule 67 B judgment or a judgment adjudicating the counterclaims. On January 4, 2000, the trial court entered final judgment dismissing the counterclaims and defendant filed a timely supplemental notice of appeal from that judgment.

estimated at this time of [*sic*] amount to $44.00 per mo, said payment to be adjusted as taxes and insurance premiums increase or decrease.

"*Second party shall not pay more than $2,000.00 on the unpaid principal balance during any one calendar year.*" (Emphasis added.)

The transaction involved only the land sale contract. Plaintiffs gave no promissory note or trust deed.

Thereafter, plaintiffs thrice borrowed funds from defendant to make improvements to the property and for other purposes. Each of those loans was secured by a note and mortgage against the property. Plaintiffs also obtained a loan from, and gave a mortgage to, the Portland Development Commission to make improvements to the property. As a result of each of those transactions, plaintiffs' total indebtedness secured by their interest in the property was approximately $60,000.

In December 1996, a third party made an offer to purchase the property from plaintiffs. Defendant agreed that plaintiffs could pay off the mortgages but, invoking the land sale contract's prepayment restriction, defendant refused to allow plaintiffs to pay off the principal balance under that contract. Defendant informed plaintiffs that, with defendant's consent, the land sale contract could be assumed by a new buyer, explaining that its consent was necessary to "verify that the new buyer had seen the home and had the financial ability to make the contract payments." The prospective buyers refused to assume the contract. Consequently, the sale failed.

In August 1997, plaintiffs filed this action, seeking, *inter alia*, a declaration of their rights under the land sale contract. The operative first amended complaint alleged, in part:

"3.   Said residence [which was the subject of the land sale contract between the parties] was purchased for and intended by Plaintiffs and Defendant to be for Plaintiffs' personal, family, and household use.

"* * * * *

"5. Defendant's purchase money loan purports to restrict Plaintiffs from selling their home without Defendant's permission, or to pay off the unpaid balance without Defendant's permission.

"6. * * * Plaintiffs' loan agreement with Defendant Lincoln Loan Co. does not contain [the notice required by ORS 82.170], and Plaintiffs are entitled to pay the remaining balance at any time.

"* * * * *

"11. Plaintiffs contend that Defendant is not entitled to refuse payment in full pursuant to ORS 82.170. Plaintiffs further contend that without regard to ORS 82.170, the clause that purports to prevent them from selling their residence without Defendant's approval, especially in light of Defendant's refusal to grant such approval, and the clause that purports to prevent Plaintiffs from paying the loan in full, when taken together, constitute an unlawful restraint on alienation that is void as a matter of public policy. Plaintiffs also contend that said clauses, taken together, are unconscionable and therefore unenforceable."

Plaintiffs sought a declaration that they were entitled to prepay the entire amount owed to defendant and, upon payment, to sell their residence, with defendant being required to execute "any documents necessary to terminate" its interest. Plaintiffs further sought a declaration that defendant was not entitled to interest that accrued on the principal balance after November 1996, when plaintiffs presented a purchaser for the property and defendant refused to accede to the sale. Finally, plaintiffs sought attorney fees under the fee provision of the land sale contract.

After some preliminary procedural sparring, the parties filed cross-motions for summary judgment. Specifically, plaintiffs sought a summary determination that: (1) the prepayment restriction was "void for lack of notice under ORS 82.170," and, consequently, plaintiffs had "an absolute right to prepay"; (2) the prepayment restriction and assignment clauses were unenforceable as unlawful restraints on plaintiffs' right to alienate their property; (3) the contractual restrictions on prepayment and sale or assignment were "unconscionable and violate defendant's duty to act in good faith"; and (4) because plaintiff was entitled to pay the full

balance due, defendant's failure to accept payment terminated the accrual of interest and damages on plaintiffs' obligation under the contract.[2]

Defendant's position was, essentially, the obverse: *First*, ORS 82.170 did not apply to the land sale contract and, consequently, that statute did not bar enforcement of the maximum prepayment restriction. *Second*, neither the prepayment restriction nor the assignment restriction of the land sale contract either individually or in combination effected an unlawful restraint on the alienability of the property.[3]

The trial court granted plaintiffs' motion for summary judgment and denied defendant's cross-motion:

> "2. This real estate installment contract is a loan agreement within the meaning of ORS 82.150-.170. The legislature clearly intended to protect consumers from restrictions on prepayment for transactions such as the instant one. Seller financing is a form of loan.
>
> "3. Since Defendant did not provide the statutorily mandated notice set forth in ORS 82.170, Plaintiffs are entitled to prepay their contract balance at any time.
>
> "4. Also, Defendant's form of contract, which prohibits any alienation of Plaintiffs' interest without Defendant['s] approval, when coupled with the prohibition against prepaying the contract balance and eliminating the interest of [Defendant] in the real property, results in a substantial or total restraint on the alienation of the property which is prohibited by public policy. The public has a substantial interest in the free marketability of real property, especially single family residences, so as to maintain a competitive marketplace for the benefit of the economy overall, to permit owners of real property to be able to realize the fair

---

[2] In support of their motion, plaintiffs submitted the affidavit of plaintiff Tanja Carey, who averred that plaintiffs "have another buyer who is ready, willing, and able to purchase the property" for a sale price of $79,000. Plaintiffs also submitted the affidavit of James Broadus, a licensed real estate agent who specializes in "lower priced homes" in the area where plaintiffs' property is located. Broadus averred that plaintiffs' property is "unmarketable" because of the combined effect of the prepayment restriction and the assignment clause.

[3] Defendant raised additional contentions, that are not material to our disposition of the appeal.

value of their property by selling it in a competitive market-place and to permit buyers to pay only fair value for such real property. Any historical distinction between legal title and equitable title is irrelevant to such underlying policies, and the law has long determined to look at substance over form.

"5. Plaintiffs would have paid off their entire debt to [Defendant] in December, 1996 but for [Defendant's] refusal to accept full payment through a sale of their home. Therefore, as of January 1, 1997 Plaintiffs do not owe any interest on their obligations to [Defendant] secured by their residence."[4]

The court consequently declared that plaintiffs were entitled to sell the property and that, upon full payment of the contract balance, they were entitled immediately to "receive a deed to the property deeding to them marketable title." The court subsequently entered its judgment setting the terms for the sale of the property and a supplemental judgment awarding plaintiffs fees pursuant to the contract.

On appeal, defendant raises four assignments of error. The first three pertain to the allowance of summary judgment and, specifically, to the trial court's determinations that the land sale contract is subject to ORS 82.170 and that the disputed contract provisions are unenforceable as unreasonable restraints against alienation. The fourth assignment challenges the award of contractual attorney fees.

In its first assignment of error, defendant asserts that the trial court erred in concluding that a land sale contract is a "loan agreement" governed by the notice provisions of ORS 82.170. ORS 82.170 provides:

"(1) If a *loan agreement* authorizes the lender to refuse to accept repayment of the loan prior to the date provided for repayment in the loan agreement, the loan agreement shall contain in printing or writing of a size equal to at least 10-point bold or underlined type substantially the following notice:

---

[1] The court's order did not address plaintiffs' alternative, unconscionability arguments.

> "NOTICE TO THE BORROWER
>
> "Do not sign this loan agreement before you read it. This loan agreement authorizes the lender to refuse to accept repayment of the loan prior to the date provided for repayment in the loan agreement.

> "(2) If a loan agreement does not contain a notice as required by subsection (1) of this section, a lender shall not refuse to accept repayment of the loan by the borrower prior to the date provided by repayment." (Emphasis added.)

ORS 87.150 defines "loan" and "loan agreement":

> "(1) 'Loan' means a *loan of money* that is primarily for personal, family or household use made by a person who is regularly engaged in the business of lending money.

> "(2) 'Loan agreement' means the written document *issued in connection with a loan* that sets forth the terms upon which the *loan* is made." (Emphasis added.)

Thus, "loan agreement" for purposes of ORS 82.170 requires a "loan," and a "loan" must be "a loan of money."

■■ Defendant asserts that the underlying transaction memorialized in the installment land sale contract is not a "loan of money" and, therefore, is not subject to the notice requirements of ORS 82.170. Defendant contends, particularly:

> "Real estate installment sale contracts involve a seller who sells, and a buyer who buys. 'A sale * * * is the transfer of property from one person to another for a valuable consideration.' Neither party to a land sale contract is lending or borrowing money, and there is no delivery of money. A purchaser makes payment to acquire something the purchaser did not have before the transaction; in contrast, a borrower makes payments to pay back what he merely borrowed at the outset of the transaction." (Citations omitted.)

When interpreting a statute, we generally give the statutory terms their plain, ordinary, and natural meanings. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Adhering to that principle, we conclude that

the transaction memorialized in an installment land sale contract is not a "loan of money." Rather, the underlying transaction is a sale, which, by its terms, provides for *deferred payment for the property*, not *repayment of monies loaned*.

The threshold, and ultimately dispositive, question is the meaning of "loan." ORS 82.150(1), somewhat tautologically, defines "loan" as "a *loan* of money," but never gives content to the predicate term. As a matter of common usage, "loan" means:

> "[S]omething lent for the borrower's temporary use on the condition that it or its equivalent be returned * * * [or] the grant of temporary use made by a lender." *Webster's Third New Int'l Dictionary*, 1326 (unabridged ed 1993).

Similarly, "lend" means:

> "To give into another's keeping for temporary use on condition that the borrower return the same or its equivalent * * * [or] to let out (money) for temporary use on condition that it be repaid with interest at an agreed time." *Id.* at 1293.

Oregon case law has adopted and consistently reiterated those plain-meaning definitions. *See, e.g., Gen. Elec. Credit Corp. v. Tax Com.*, 231 Or 570, 591, 373 P2d 974 (1962) (" 'The word "loan" implies an obligation to repay.' ") (quoting *Carson v. Olcott*, 105 Or 259, 262, 209 P 610 (1922)); *State v. Moltzner*, 141 Or 355, 359-60, 17 P2d 555 (1933) ("The word, loan, imports a borrowing of money or other personal property by a person who promises to return it. * * * 'A loan is made whenever the borrower receives money over which he exercises dominion, and which he expressly or impliedly promises to return.' ") (quoting *First National Bank of Cordova v. Tjosevig*, 138 Wash 231, 244 P 736 (1926)).

More recently, in *Haeger v. Johnson*, 25 Or App 131, 134, 548 P2d 532 (1976), we construed the term "sale" as used in the Unlawful Trade Practices Act, ORS 646.605(1), in determining whether the "making of loans" was a "sale of goods or services." In concluding that it was not, we observed

"[W]e are unable to agree with [petitioner] that the *lending of money* is a sale of goods or services. When the making of loans would seem to have some aspects of the sale of a service, we are unable to find any cases which hold such to be the case. 'Sale' is a word of precise legal meaning. A loan of money is not a sale. *A loan is defined as 'to let out (money) for temporary use on condition that it be repaid with interest at an agreed time.'* " *Id.* at 135 (emphasis added; citations omitted).

We adhere to that reasoning. A land sale contract with installment payment terms is not a "loan," in that there has been no transfer of money from the contract vendor to the vendee, coupled with the vendee's promise to *repay* the money. Rather, the installment sale contract evinces a sale of *land*, with *deferred payment*.

■ Our understanding of "loan" comports contextually with other aspects of ORS 82.150, ORS 82.160 and ORS 82.170. Most significantly, both ORS 82.170(1) and (2) refer consistently to "repayment" throughout. For example, the lender must provide the statutorily prescribed notice only when the "loan agreement authorizes the lender to refuse to accept *repayment*" prior to the date provided in the loan agreement. ORS 82.170(1). Similarly, the model notice set out in subsection (1) provides:

"Do not sign this loan agreement before you read it. This loan agreement authorizes the lender to refuse to accept *repayment* of the loan prior to the date provided for *repayment* in the loan agreement."[5] (Emphasis added.)

Plaintiffs nevertheless assert that "contextual" reference to provisions of ORS chapter 86, specifically ORS 86.205(1), (4), and (7),[6] demonstrates that "loan," for purposes of ORS 82.150 *et seq.,* necessarily encompasses land

---

[5] The requirements of ORS 82.160 are similarly premised on the existence of an agreement for "repaying" and "repayment" of "the loan."

[6] ORS 86.205 provides, in part:

"(1) 'Borrower' means any person who becomes obligated on a real estate loan agreement, either directly or indirectly, and includes, but is not limited to, mortgagors, grantors under trust deeds, vendees under conditional land sales contracts, and persons who purchase real property securing a real estate loan agreement, whether the persons assume the loan or purchase the property subject to the loan.

"* * * * *

sale installment contracts. Plaintiffs are wrong. Even if we were to assume that the definitional provisions of chapter 86 could somehow otherwise be deemed part of the "context" of ORS 82.150 *et seq.*,[7] those definitions were enacted in 1975,[8] two years after the 1973 enactment of ORS 82.150 to 82.170.[9] Consequently, they cannot be considered as "context." *Stull v. Hoke*, 326 Or 72, 79, 948 P2d 722 (1997).

Plaintiffs argue, finally, that the transaction between a vendor and a vendee in a land sale contract is, "in effect," a loan because the transaction involves seller financing. As support for that pragmatic proposition, plaintiffs cite *Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 311, 822 P2d 694 (1991). Plaintiffs are correct that in *Bedortha* the court quoted from a law review article that, *inter alia*, described one attribute of a land sale contract as " 'in effect, the buyer borrows the purchase price from the seller.' " *Bedortha*, 312 Or at 311 (quoting Patrick A. Randolph, Jr., *Updating The Oregon Installment Land Contract*, 15 Will L Rev 181, 182 (1979)). That passing "in effect" observation was a single sentence in a much longer quotation—and was, in all events, made in a completely different context. Nothing in *Bedortha* involved the interpretation or application of ORS 82.150 *et seq.* Rather, the only issue in *Bedortha* was

"whether a vendor's right to receive payments under an executory land sale contract is a separate personal property interest of the vendor or whether that interest is part of the vendor's real property interest and, therefore, subject to a judgment lien." 312 Or at 309.

---

"(4) 'Lender' means any person who makes, extends, or holds a real estate loan agreement and includes, but is not limited to, mortgagees, beneficiaries under trust deeds and vendors under conditional land sale contracts.

"* * * * *

"(7) 'Real estate loan agreement' or a 'real estate loan' means any agreement providing for a loan on residential property * * * occupied by the borrower * * *, secured in whole or in part by real property, or any interest therein, located in this state, and includes, but is not limited to, mortgages, trust deeds and conditional land sales contracts."

[7] *But see* the introductory phrase to ORS 86.205: "As used in ORS 86.205 to 86.275 * * *."

[8] Or Laws 1975, ch 337, § 1.

[9] Or Laws 1973, ch 611, §§ 1, 2, 3.

The court ultimately concluded that, unless properly severed, the right to receive contract payments is part of the vendor's real property interest and is, thus, subject to a judgment lien. 312 Or at 314. Thus, the single quoted reference in *Bedortha* not only had nothing to do with the issue presented here, but was incidental to the issue and analysis in *Bedortha* itself.

We thus conclude that the legislature unambiguously limited the application of ORS 82.170 to transfers of money that are to be repaid. Consequently, installment land sale contracts are not "loan agreements" subject to the notice requirements of ORS 82.170, and the land sale contract here was not invalid because of the failure to include the statutory notice. The trial court erred in concluding otherwise.[10]

■■ Defendant next challenges the trial court's alternative holding that, regardless of the applicability of ORS 82.170, the combination of the maximum prepayment limitation and the limitation on assignment rendered the land sale contract unenforceable as effecting an impermissible restraint on alienability. In determining whether the disputed contract provisions, either individually or in combination, create an *unreasonable* restraint on alienation of property, we balance the justification for the restraint against the quantum of restraint actually imposed. *See, e.g., United Savings Bank Mutual v. Barnette,* 72 Or App 46, 51, 695 P2d 73, *rev den* 299 Or 203 (1985) (in concluding that a due-on-sale clause was reasonable, the court weighed the effect the provision had on the ability to dispose of the property against the benefits such clauses have on interest rates and loan availability in the marketplace, generally).

■ We begin with the maximum prepayment restriction:

> "Second Party [plaintiffs] shall not pay more than $2,000.00 on the unpaid principal balance during any one calendar year."

No Oregon court has ever voided a prepayment restriction as impermissibly burdening alienability. Rather, as a general

---

[10] Given our conclusion that ORS 82.170 did not apply to the parties' contract, we need not address defendant's third assignment of error, which asserts that the agreement substantially complied with ORS 82.170.

rule, a debtor has no right to accelerated prepayment of an installment obligation unless the creditor consents or the agreement "expressly provide[s] a prepayment option." *See Cimarron West Properties, Inc. v. Lincoln Loan Co.*, 123 Or App 614, 617 n 2, 860 P2d 871 (1993) (" 'If a debt is payable in instal[l]ments at fixed dates, the instal[l]ments cannot be paid before their due dates unless the creditor consents to receive the prepayments' or the 'agreement * * * expressly provide[s] a prepayment option,' " *quoting* 60 Am Jur, *Payment*, 2d § 14; (emphasis omitted)).

■ The justification for such prepayment limitations is apparent: They provide vendors with a fixed cash flow over a certain period of time "with minimal taxation and with interest." *Landura Corp. v. Schroeder*, 272 Or 644, 651, 539 P2d 150 (1975); *see also David M. Scott Construction v. Farrell*, 285 Or 563, 574-75, 592 P2d 551 (1979) (reversing trial court decree of specific performance ordering a cash sale, where earnest money agreement contemplated installment sales contract: "The defendant vendor may well have had good reasons, for tax purposes or otherwise, to prefer that payments be made by installments over a period of five years, rather than a cash payment in full.").

Conversely, the restraint on alienability resulting from enforcement of the prepayment restriction in this case can be for as few as nine years if plaintiffs exercise their contractual entitlement to pay up to $2,000 each year on the unpaid principal balance. Moreover, as amplified below, even during that period, plaintiffs can assign the contract with defendant's approval, and defendant cannot unreasonably withhold that consent. Balancing the very real justification for the maximum prepayment restrictions against the potential restraint on alienability, we conclude that the prepayment restriction, standing alone, is valid and enforceable. *See generally Hartford Life Ins. Co. v. Randall*, 283 Or 297, 583 P2d 1126 (1978) (affirming enforceability of maximum prepayment provision in "mortgage note" which "forbade a complete payoff for 11 years").

■ We turn to the contractual restriction on assignment:

> "This agreement is personal by and between the parties herein and cannot be sold, assigned or hypothecated without written consent of first party [defendant]."

Again, the justification for such a provision is apparent: to protect the vendor's interest by preventing assignment of the contract, or sale of the property, to irresponsible or insolvent third parties. *See Restatement (Second) of Property* § 15.2 comment *a* (1986) (discussing rationale for upholding of a nonassignment provision in a lease). Conversely, the potential restraint flowing from such a clause depends on whether the vendor's ability to withhold consent is absolute.

Plaintiffs' position, as we understand it, is that because the contract does not expressly provide an objective standard for refusing consent, "all alienation is subject to [defendant's] whim." Defendant responds that its exercise of consent is tempered by the duty of good faith and, thus, the consent-to-assignment clause does not unreasonably restrain plaintiffs' ability to dispose of their interest in the property. Defendant is correct.

██ ██ The duty of good faith applies to all contract provisions, including assignment clauses, and "operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract." *Pacific First Bank v. New Morgan Park Corp.,* 319 Or 342, 354, 876 P2d 761 (1994).[11] Unless other terms in the contract indicate a contrary expectation, where, the "lease states tenant may assign only with landlord's consent or tenant may not assign without landlord's consent there is engrafted on this language by implication the phrase which consent shall not be unreasonably withheld."[12] *Id.* at 353 (internal quotation marks omitted). Consequently, although the "consent-to-assignment"

---

[11] In *New Morgan Park*, the court addressed the scope of a lease provision pertaining to the landlord's right to withhold consent to the transfer of the lease. The factual distinctions between *New Morgan Park* and this case—*e.g.*, "lease" versus "sale"—do not affect the applicability of that case's general "good faith and fair dealing" analysis to this context.

[12] In *New Morgan Park*, the court concluded that, because some provisions of the lease expressly provided that the landlord would not *"unreasonably* withhold its consent" and other provisions pertaining to the landlord's consent did not include that language, the parties did not intend the latter to incorporate the reasonableness qualification. 319 Or at 353-54 (emphasis in original).

clause in the land sale contract restrains plaintiffs' right to alienate their interest in the property, that restraint is not, as they assert, absolute or subject to the defendant's "whim." Given its manifest justification, and its minimal restraint on alienation, the consent-to-assignment clause is, by itself, valid and enforceable.

We consider, finally, whether the maximum prepayment provision and the consent-to-assignment provision in combination impermissibly restrain alienation of the property. They do not.

As discussed above, those clauses serve different purposes, both fully justified. The prepayment restriction reasonably protects defendant's interest in a fixed flow of income with minimal tax consequences, while permitting plaintiffs to pay off the contract in as few as nine years. In addition, plaintiffs can assign or sell their interest at any time subject only to defendant's consent, which cannot be unreasonably withheld. Thus the circumstances here are materially analogous to those in *Hartford*. There, the court concluded that a maximum prepayment provision in a mortgage note that "forbade a complete payoff for 11 years," 283 Or at 299, did not effect an unreasonable restraint on alienation of the underlying property where the contract did not prevent the buyers from selling their interest in the encumbered property. *Id.* at 300. Here, as in *Hartford*, plaintiffs may sell or assign their interest—subject only to defendant's not unreasonably withheld consent—and they may, if they choose, pay off the contract in a shorter time than in *Hartford*. The trial court erred in concluding that the challenged provisions were unenforceable.

Plaintiffs nevertheless urge us to affirm the trial court's allowance of summary judgment on alternative grounds—*viz.*, their unconscionability arguments that the trial court did not address. We decline to do so. Plaintiffs' unconscionability allegations present disputed issues of material fact that are not susceptible to summary judgment.

Defendant's final assignment of error challenges the trial court's award of contractual attorney fees to plaintiffs.

Given our disposition of the other assignments of error, the award of attorney fees must be vacated.

Reversed and remanded.