Submitted on the record November 14, 2006, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings April 12, reconsideration denied June 5, 2007

David Lee CAREY
and Tanya Maria Carey,
husband and wife,
*Respondents on Review,*

*v.*

LINCOLN LOAN CO.,
an Oregon corporation,
*Petitioner on Review.*

(CC 9706-04753; CA A117696; SC S53242)

157 P3d 775

Ridgway K. Foley, Jr., of Greene & Markley, P.C., Portland, filed the brief for petitioner on review. With him on the brief was Steven E. Benson, Portland.

John M. Berman, Tigard, filed the brief for respondents on review.

Mary H. Williams, Solicitor General, Salem, filed the brief for *amicus curiae* State of Oregon. With her on the brief was Hardy Myers, Attorney General.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

BALMER, J.

** Carson, J., retired December 31, 2006, and did not participate in the consideration or decision of this case. Linder, J., did not participate in the consideration or decision of this case.

## BALMER, J.

Is the Court of Appeals lawfully constituted? Defendant Lincoln Loan Co. argues that it is not, because—in defendant's view—the provision of the Oregon Constitution that purports to authorize the legislature to establish courts was improperly adopted in 1910. It therefore follows—again, in defendant's view—that, when the legislature created the Court of Appeals by statute in 1969, it had no authority to do so. For that reason, defendant asserts, the Court of Appeals decision in this case, which reversed a trial court judgment in favor of defendant, is invalid and must be vacated. The Court of Appeals rejected defendant's argument that that court was improperly established and ruled against defendant on the merits. For the reasons set out below, we affirm the decision of the Court of Appeals.

## I. BACKGROUND

Plaintiffs David Carey and Tanya Carey purchased a house from defendant pursuant to a land sale contract that included various provisions that made it difficult for plaintiffs to sell the house to a third party. Plaintiffs later brought this declaratory judgment action, arguing that those provisions violated statutes applicable to loan agreements of that kind and that a provision in plaintiffs' loan agreement with defendant that limited plaintiffs' ability to prepay the contract was an impermissible restraint on alienation. Plaintiffs asserted that those contract provisions rendered the loan agreement unconscionable and unenforceable. The trial court granted plaintiffs' motion for summary judgment, but the Court of Appeals reversed. *Carey v. Lincoln Loan Co.*, 165 Or App 657, 998 P2d 724 (2000). The Court of Appeals held that defendant was entitled to judgment on some of the claims; however, it also concluded that plaintiffs' claim that the contract provisions were unconscionable was not susceptible to summary judgment. *Id.* at 671. Accordingly, the court remanded the case to the trial court for further proceedings.

On remand, the trial court determined that the provisions were not unconscionable. Plaintiffs appealed. Defendant responded to that appeal by challenging the Court of Appeals' jurisdiction to hear the appeal. Defendant argued

that Article VII (Amended) of the Oregon Constitution—which provides, in part, that "[t]he judicial power of the state shall be vested in one supreme court and *such other courts as may from time to time be created by law*" (emphasis added)—was improperly adopted by the voters in 1910. Defendant based that argument on several constitutional provisions that we describe below. Without Article VII (Amended) in place, defendant claimed, the legislature had lacked the authority to create the Court of Appeals because Article VII (Original), which establishes the judicial power of the state, did not grant the legislature that authority.[1] Therefore, defendant argued, the Court of Appeals was unconstitutionally established and lacked subject matter jurisdiction to consider plaintiffs' appeal.

The Court of Appeals rejected defendant's argument, holding that, even if the adoption of Article VII (Amended) were flawed, subsequent amendments to that article cured any defect in the adoption of the provision authorizing the legislature to create new courts. *Carey v. Lincoln Loan Co.*, 203 Or App 399, 407-15, 125 P3d 814 (2006). The Court of Appeals then proceeded to the merits of plaintiffs' appeal and held that some of the contractual provisions were unconscionable. We granted defendant's petition for review to consider defendant's challenge to the constitutionality of the legislation that created the Court of Appeals.

## II.  DEFENDANT'S CHALLENGE TO ARTICLE VII (AMENDED)

■■    We first note that defendant raised the issue presented here in *Lincoln Loan Co. v. City of Portland*, 340 Or 613, 136 P3d 1 (2006). There, this court declined to reach the merits of defendant's argument, because that action was a collateral attack on a judgment in a separate action that had been litigated fully and in which defendant had participated without challenging the Court of Appeals' jurisdiction. Accordingly, this court concluded that defendant was barred by claim preclusion from challenging the earlier judgment.

---

[1] The text of Article VII (Original) of the Oregon Constitution, as adopted in 1857, is set out in Appendix A.

*Id.* at 630. Here, however, we do reach defendant's argument that the Court of Appeals was improperly established and, for the reasons discussed below, reject it.[2]

In *Lincoln Loan,* this court summarized the basis for defendant's challenge to the validity of the Court of Appeals:

"[Defendant] asserts that the procedure by which the voters adopted Article VII (Amended) in 1910 suffered from three constitutional defects. For that reason, according to [defendant], Article VII (Amended) never became part of the Oregon Constitution, and Article VII (Original) 'remains in full force and effect today.' Article VII (Original), section 1, provides, in part, that '[t]he Judicial power of the State shall be vested in a Supr[e]me Court, Circuit[ ] Courts, and County Courts * * *.' That provision also refers to justices of the peace and to municipal courts. However, Article VII (Original) does not mention or provide for an intermediate Court of Appeals and does not authorize the legislature to create a Court of Appeals—or, indeed, any court. In contrast, Article VII (Amended), section 1, provides, in part:

" 'The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. * * *'

"The legislature created the Court of Appeals in 1969. Or Laws 1969, ch 198. If Article VII (Amended), section 1, is a valid part of the Oregon Constitution, then the legislature

---

[2] We initially held defendant's petition for review in this case until deciding *Lincoln Loan,* 340 Or 613. We then allowed the petition for review and requested the parties to brief the issue of whether principles of judicial estoppel—specifically, defendant's earlier appeal in this case to the very Court of Appeals that defendant now claims was unconstitutionally established—would prevent us from considering the merits of defendant's challenge to Article VII (Amended). The parties promptly and capably briefed that issue. Based on those briefs, we conclude that judicial estoppel does not bar defendant's present challenge to the Court of Appeals' jurisdiction over plaintiffs' appeal. Judicial estoppel generally does not prevent a party to a case from challenging a court's subject matter jurisdiction, even after the party has invoked or consented to the jurisdiction of the court. *See Grubb v. Public Utilities Comm.,* 281 US 470, 475, 50 S Ct 374, 74 L Ed 972 (1930) (so holding); *Wink v. Marshall,* 237 Or 589, 592, 392 P2d 768 (1964) ("Jurisdiction cannot be conferred by the parties by consent, nor can the want of jurisdiction be remedied by waiver, or by estoppel."). In contrast to *Lincoln Loan,* where defendant brought an action challenging a final judgment in a separate case, defendant's present challenge to the Court of Appeals' validity comes in the same case in which defendant earlier had invoked the Court of Appeals jurisdiction. Principles of judicial estoppel and law of the case do not bar defendant from raising its subject matter jurisdiction claim at this point.

had the authority to create the Court of Appeals, and [defendant's argument] fails. If Article VII (Amended), section 1, is *not* a valid part of the Oregon Constitution, then the legislature had no authority to create the Court of Appeals, [and] the Court of Appeals had no authority to reverse [the trial court judgment in defendant's favor]."

340 Or at 616-17 (emphasis in original).

Defendant argues that the 1910 initiative petition that created Article VII (Amended) was adopted unconstitutionally because it (1) encompassed more than one constitutional amendment, but did not permit voters to vote separately on each amendment, in violation of Article XVII, section 1, of the Oregon Constitution; (2) was enacted without compliance with the canvass and proclamation requirements of Article XVII, section 1, of the Oregon Constitution; and (3) failed to set forth the full text of the proposed constitutional amendment, in violation of Article IV, section 1(2)(d), of the Oregon Constitution.

### III.  VALIDATION OF ARTICLE VII (AMENDED) BY SUBSEQUENT AMENDMENTS

A. *Post-1910 Amendments to Article VII (Amended)*

Defendant's argument is directed at Article VII (Amended) as it was presented to the voters in 1910.[3] However, defendant first raised that issue in this case in 2004, when it moved to dismiss plaintiffs' appeal on the ground that the Court of Appeals was improperly established and therefore lacked jurisdiction to consider that appeal. Article VII (Amended), as it now appears in the Oregon Constitution, is not the same as it was when Article VII (Amended) was adopted in 1910. The article has been amended 10 times over the course of almost a century; it has been construed in dozens of decisions issued by this court; and the legislature has enacted many statutes based upon the authority conferred by that article. This case thus is different from *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998), and other recent cases considering challenges to constitutional amendments

---

[3] In much of the following discussion, we draw on the Court of Appeals' thoughtful opinion in this case. Our analysis here is not identical to that of the Court of Appeals, but it is consistent with that analysis.

based on alleged procedural irregularities in their adoption. Those cases all were filed relatively soon after the challenged amendments had been approved by the voters and before the voters had made changes to the challenged constitutional provisions or the legislature had enacted statutes based upon them. As the Court of Appeals noted in this case, "The issue before us is not whether [the] challenge would have succeeded in 1910 but whether it will succeed today." *Carey,* 203 Or App at 408.

Put differently, defendant's challenge to the validity of the Court of Appeals depends not on whether the Court of Appeals would have been a validly created entity if it had been established on the effective date of the 1910 constitutional amendment, but rather on whether the Court of Appeals is a valid entity now.[4] Accordingly, we first examine the changes that the voters have made to Article VII (Amended) since 1910. In doing so, we shall assume, without deciding, that the initial adoption of Article VII (Amended) in 1910 was defective in one or more of the particulars asserted by defendant. We shall then consider whether the post-1910 amendments, either because of the content of those changes themselves or with respect to their effect on Article VII (Amended) as a whole, provide a valid constitutional basis for the legislation creating the Court of Appeals.

As adopted in 1910, Article VII (Amended) consisted of sections 1 through 7.[5] Section 1 provided, in part—in words that have not been changed since 1910—"The judicial power of the state shall be vested in one supreme court and in such other courts as from time to time may be created by law." That section also provided for the election of judges to six-year terms and prohibited judicial compensation from being reduced during a judge's term. Section 2 provided that the existing judicial system, except as expressly changed by the adoption of Article VII (Amended), would remain as it had been and also granted the Supreme Court original jurisdiction in mandamus, quo warranto, and habeas corpus proceedings. Section 3 contained a number of provisions

---

[4] Or, at least, whether the Court of Appeals was a valid entity when defendant raised this challenge in 2004.

[5] The 1910 text of Article VII (Amended) is set out in Appendix B.

respecting the conduct of trials and appeals from trial court decisions, and section 4 dealt with terms and decisions of the Supreme Court. Section 5 provided that a verdict in a civil case could be rendered by three-fourths of the jurors and also established procedures for grand juries and for indictments. Section 6 dealt with misconduct by public officers, and section 7 prescribed the oath of office for judges of the Supreme Court.

The people—the source of Oregon's Constitution—adopted Article VII (Amended), by initiative petition, in 1910. The people then made changes to that article on 10 separate occasions. They amended different sections of Article VII (Amended); they repealed and replaced other sections; and they added new sections, some of which they subsequently amended.[6] We turn to a discussion of those changes.

Article VII (Amended) was first amended in 1958. Two years earlier, in *State ex rel Madden v. Crawford*, 207 Or 76, 295 P2d 174 (1956), this court had considered the constitutionality of a statute that authorized designating circuit court judges to sit temporarily as members of this court to assist the court with its workload. The court held that the statute was unconstitutional because it permitted circuit court judges to sit "as members" of the Supreme Court, even though Article VII (Amended), section 1, required that members of the Supreme Court be elected. The 1957 legislature then submitted to the voters a new proposed section 2a to Article VII (Amended) that authorized the legislature to empower this court to appoint retired judges to sit as temporary members of this court, to appoint members of the bar to sit as temporary members of inferior courts, and to assign judges of inferior courts to serve temporarily outside the district for which they were elected. Or Laws 1957, SJR 30. The voters approved that proposal in 1958.

The 1957 Legislative Assembly also submitted to the voters a proposed amendment to section 5 of Article VII (Amended) that authorized a person to waive indictment by a grand jury and instead to be charged by an information filed by the district attorney. Or Laws 1957, SJR 23. That proposal

---

[6] The current version of Article VII (Amended) is set out as Appendix C.

also was approved by the voters in 1958. In 1974, the voters repealed amended section 5 and replaced it with the current version. That 1974 amendment revised the procedures for convening a grand jury and specified when a district attorney could charge a person by filing an information. Or Laws 1973, SJR 1.

The voters again amended Article VII (Amended) in 1960, adopting a proposal submitted by the legislature that required judges to retire at the end of the calendar year in which the judge attained the age of 75. Or Laws 1959, SJR 3. That measure also authorized the legislature by law to fix a lesser age for mandatory retirement (but not earlier than the end of the calendar year in which the judge became 70); to provide for temporarily recalling retired judges to active service; and to authorize or require the retirement of judges for disability or other cause that rendered the judge incapable of performing judicial duties.

The 1961 Legislative Assembly submitted to the voters and the voters in 1962 approved another addition to Article VII (Amended)—section 2b—which authorized the legislature, when it enacted laws creating courts inferior to the Supreme Court or dealing with court jurisdiction, to make such laws applicable to all judicial districts, to designated classes of judicial districts, or to particular judicial districts. Or Laws 1961, SJR 34.[7] Although the new section 2b itself did not purport to authorize the legislature to establish courts, it explicitly referred to "laws creating courts inferior to the Supreme Court" and thus necessarily assumed that the legislature already had the authority under Article VII (Amended), section 1, to enact laws creating such courts.

A provision authorizing the Supreme Court to remove a judge from office for misconduct was added to Article VII (Amended) as section 8 in 1968. Or Laws 1967, SJR 9. That measure identified certain actions that could be

---

[7] Section 2b responded to cases interpreting Article IV, section 23, of the Oregon Constitution, which had construed that provision to prohibit the legislature from enacting laws related to courts that identified counties by name on the ground that those laws were a prohibited type of "special" or "local" law. The Court of Appeals reviewed the origins of the 1962 addition of section 2b in detail in *Carey*, 203 Or App at 408-12.

grounds for removal, but, like many of the other amendments to Article VII (Amended), it provided that the specific procedures would be established by statute, by stating that removals would be "[i]n the manner provided by law * * *." Section 8 of Article VII (Amended) was further amended in 1976, with the addition of suspension and censure as possible sanctions, in addition to removal from office, and with changes in the grounds for discipline. *See* Or Laws 1975, SJR 48 (setting out text of proposed amendment to Article VII (Amended), section 8).

The legislature proposed, and the people in 1972 approved, a new section 9 of Article VII (Amended), authorizing legislation to permit juries consisting of less than 12 but not less than six jurors. Or Laws 1971, SJR 17.

In 1974, the people amended Article VII (Amended), section 3, to increase the value in controversy that would entitle a party to a jury trial from $20 to $200. Or Laws 1973, HJR 71. Section 3 was again amended in 1996 to increase the value in controversy requirement to $750. Or Laws 1995, HJR 47.

B. *Effect of Post-1910 Amendments*

We now consider whether, assuming that the initial adoption of Article VII (Amended) in 1910 was improper in one or more of the ways that defendant suggests, the people's repeated votes on specific changes to that article demonstrate that they impliedly have cured any such defect.

We begin by considering cases from Oregon and other jurisdictions regarding the circumstances in which subsequent laws have been held to ratify or validate earlier laws that allegedly had been adopted improperly. Oregon courts long have held that defects in laws can be cured by subsequent legislative action, as long as the subsequent action does not impair vested rights or the obligation of contract. In *Nottage v. City of Portland*, 35 Or 539, 58 P 883 (1899), for example, the issue was whether the city could collect a street assessment when the petition for the improvement had not contained the names of one-half of the affected property owners, as required by the city charter. The city argued that the

procedural defect in the assessment had been cured by a legislative amendment to the city charter enacted after the assessment had been made. This court agreed with the city:

> "It is true, the [later ordinance] does not, in language, purport to validate or legalize irregularities in proceedings for the improvement of a street, but *defects of this character may be cured by implication* * * *. And when the legislature authorized the city to bring an action against the property owners to recover the amount of the assessments, notwithstanding any irregularity or defect in the proceedings, it necessarily intended to and did render immaterial such defects, and it can be no objection to the validity of the act that it does not used the words 'ratify,' 'confirm,' or 'validate.'"

35 Or at 556-57 (emphasis added). *See also State ex rel. v. School District No. 23*, 179 Or 441, 460-61, 172 P2d 655 (1946) (dismissing challenge to defective school consolidation order on grounds of laches and stating that three elections—one for school district directors, another ratifying district's selection of school site, and a third approving the sale of bonds—"were, in effect, successive ratifications by the voters of the consolidation order").

Cases from other jurisdictions similarly hold that subsequent legislation can validate constitutionally defective laws by implication. In *Wrought-Iron Range Co. v. Carver*, 118 NC 328, 24 SE 352 (1896), the legislature had passed and the governor had signed a tax statute, but the President of the Senate and the Speaker of the House had not signed the bill, as required by the state constitution. However, the North Carolina Supreme Court upheld assessments made under the tax statute, because a statute that was properly enacted at the same legislative session referred to the tax and treated it as effective. Similarly, in *Comm'rs of Leavenworth Co. v. Higginbotham*, 17 Kan 62 (1876), the President of the Senate failed to sign an 1865 bill that otherwise was properly adopted. Statutes passed in 1866 and 1867 treated the 1865 statute as valid, and the Kansas Supreme Court held that the subsequent statutes effectively validated the defective 1865 statute.

In a more recent case, *Beck v. Beck*, 814 SW 2d 745 (Texas 1991), the Texas courts had held that a statute authorizing certain prenuptial agreements was unconstitutional under the Texas Constitution in effect at the time that the statute was enacted. In 1980, the legislature proposed, and the people adopted, a constitutional amendment under which those agreements would be valid. Although the constitutional amendment did not refer to the earlier statute or to existing agreements, the Texas Supreme Court held that, under the doctrine of implied validation, the previously unconstitutional statute—and actions authorized by that statute—were validated, to the extent that validation did not interfere with vested rights or impair the obligation of contract. *See Beck*, 814 SW 2d at 747 (describing "doctrine of implied validation").

◼ The cases discussed above involve the subsequent validation of defective statutes, rather than defective constitutional provisions. However, the same rationale applies to the people's constitutional authority to amend that organic law, and we reach the same conclusion here: Irregularities in the people's adoption of a constitutional amendment may be cured by subsequent constitutional amendments that the people enact that implicitly validate the earlier, defective amendment.[8]

◼ We now consider the application of that principle to the unusual circumstances here. As discussed in detail above, since its adoption almost a century ago, the people have amended, through 10 different votes, the original version of Article VII (Amended). In adopting those 10 amendments, the people (1) necessarily viewed each amendment as a valid exercise of their authority to change the constitution, and (2) necessarily assumed that Article VII (Amended) was

---

[8] Subsequent validation may not be sufficient to cure an earlier defect if it would have the effect of impairing a vested right, however. *See Smith v. Cameron et al,* 123 Or 501, 507, 262 P 946 (1928) (statute could not be applied retroactively to validate plaintiff's eminent domain action against defendant, because defendant already had a "vested right" in the property); *Beck v. Beck,* 814 SW2d at 747 (retroactive validation of statute not permissible if it would "impair the obligation of a contract or impair vested rights."). Here, however, the 10 amendments to Article VII (Amended) were adopted between 1958 and 1996. Any "right" of defendant in the favorable trial court judgment that it obtained in 2000 vested long after the voters had cured any defect in the 1910 adoption of Article VII (Amended).

a valid part of the constitution that could be the subject of amendment or repeal. Moreover, each of those amendments necessarily was approved with the intent of the people to amend Article VII (Amended) as it had been presented to the voters in 1910 (or as amended by post-1910 amendments). The post-1910 amendments, of course, are of equal dignity as the 1910 amendment that adopted Article VII (Amended) and therefore could—and did—correct, modify, and repeal parts of that earlier constitutional provision. *See In re Fadeley*, 310 Or 548, 560, 802 P2d 31 (1990) (later-enacted constitutional provision was of equal dignity as earlier provisions and therefore modified earlier provisions). By properly adopting those amendments, the people necessarily, if implicitly, validated the 1910 adoption of Article VII (Amended) and cured any irregularities that might have accompanied its adoption.

The people's assumption, in subsequently amending Article VII (Amended), of the validity of that article is consistent with the treatment of that article in several of this court's cases. Although not addressing the specific issue presented here, those cases implicitly relied on the validity of Article VII (Amended) and, particularly, the authority that that article conferred on the legislature to create inferior courts. In *State v. Harvey*, 117 Or 466, 242 P 440 (1926), for example, this court rejected the defendant's claim that the court of domestic relations did not have jurisdiction over his alleged crime of contributing to the delinquency of a minor. The court began its opinion by quoting Article VII (Amended), section 1, providing for the creation of courts by law, and held that the legislature had created the court of domestic relations by law and that that court had jurisdiction over the defendant's case. Similarly, in *State ex rel Madden v. Crawford*, this court treated Article VII (Amended) as a valid part of the constitution and explained that it had authorized the legislature to "create new and additional courts[,]" even stating in *dicta* that the legislature "may provide for an intermediate court of appeals * * *." 207 Or at 83. As this court stated even more bluntly 80 years ago, "That the whole judicial system may be changed by the legislative power is taught

in Section 2[ ] of Article VII [(Amended)]." *LaGrande v. Municipal Court et al.*, 120 Or 109, 115, 251 P 308 (1926).[9]

For the reasons set out above, we conclude that the irregularities, if any, in the adoption of Article VII (Amended) in 1910 have been cured by the implicit subsequent validation of that article by the people.[10] We therefore hold that Article VII (Amended) is now valid. It follows that the creation of the Court of Appeals in 1969, pursuant to the authority granted by Article VII (Amended), section 1, was within the legislature's authority. The Court of Appeals had jurisdiction over plaintiffs' appeal in this case. That court properly denied defendant's motion to dismiss plaintiffs' appeal and proceeded to decide the merits of that appeal.[11]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings.

---

[9] At the time that this court decided *LaGrande v. Municipal Court*, Article VII (Amended), section 2, provided, in part, that the "courts, jurisdiction, and judicial system * * * shall remain as at present constituted *unless otherwise provided by law*." (Emphasis added.)

[10] The Court of Appeals considered separately defendant's arguments that the 1910 adoption of Article VII (Amended) violated the separate-vote requirement, the canvass and proclamation requirement, and the full-text requirement, rejecting each one for reasons specific to the particular challenge. *Carey*, 203 Or App at 403-15. Because we conclude that subsequent amendments to Article VII (Amended) have validated that article, notwithstanding any irregularities that may have accompanied its adoption, we need not consider whether defendant's specific arguments respecting those defects would have been well-taken had they been advanced in 1910.

[11] We allowed defendant's petition for review to consider its challenge to the Court of Appeals' validity. We decline to address defendant's challenge to the Court of Appeals' resolution of the merits of plaintiffs' appeal. *See* ORAP 9.20(2) (Supreme Court opinion need not address each question raised in petition for review).

## APPENDIX A

### Article VII (Original) (as approved in 1857)

Section 1.   The Judicial power of the State shall be vested in a Suprume [sic] Court, Circuits [sic] Courts, and County Courts, which shall be Courts of Record having general jurisdiction, to be defined, limited, and regulated by law in accordance with this Constitution.— Justices of the Peace may also be invested with limited Judicial powers, and Municipal Courts may be created to administer the regulations of incorporated towns, and cities.—

Section 2.   The Supreme Court shall consist of Four Justices to be chosen in districts by the electors thereof, who shall be citizens of the United States, and who shall have resided in the State at least three years next preceding their election, and after their election to reside in their respective districts:— The number of Justices, and Districts may be increased, but shall not exceed five until the white population of the State shall amount to One Hundred Thousand, and shall never exceed seven; and the boundaries of districts may be changed, but no Change of Districts, shall have the effect to remove a Judge from office, or require him to change his residence without his consent.—

Section 3.   The Judges first chosen under this Constitution shall allot among themselves, their terms of office, so that the term of one of them shall expire in Two years, one in Four years, and Two in Six years, and thereafter, one or more shall be chosen every Two years to serve for the term of Six years.—

Section 4.   Every vacancy in the office of Judge of the Supreme Court shall be filled by election for the remainder of the vacant term, unless it would expire at the next election, and until so filled, or when it would so expire, the Governor shall fill the vacancy by appointment.—

Section 5.   The Judge who has the shortest term to serve, or the oldest of several having such shortest term, and not holding by appointment shall be the Cheif [sic] Justice.—

Section 6.   The Supreme Court shall have jurisdiction only to revise the final decisions of the Circuit Courts,

and every cause shall be tried, and every decision shall be made by those Judges only, or a majority of them, who did not try the cause, or make the decision in the Circuit Court.—

Section 7. The terms of the Supreme Court shall be appointed by Law; but there shall be one term at the seat of Government annually:—

And at the close of each term the Judges shall file with the Secretary of State, Concise written Statements of the decisions made at that term.—

Section 8. The Circuits [*sic*] Courts shall be held twice at least in each year in each County organized for judicial purposes, by one of the Justices of the Supreme Court at times to be appointed by law; and at such other times as may be appointed by the Judges severally in pursuance of law.—

Section 9. All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts, and they shall have appellate jurisdiction, and supervisory control over the County Courts, and all other inferior Courts, Officers, and tribunals.—

Section 10. When the white population of the State shall amount to Two Hundred Thousand the Legislative Assembly, may provide for the election of Supreme, and Circuit Judges, in distinct classes, one of which classes shall consist of three Justices of the Supreme Court, who shall not perform Circuit duty, and the other class shall consist of the necessary number of Circuit Judges, who shall hold full terms without allotment, and who shall take the same oath as the Supreme Judges.—

Section 11. There shall be elected in each County for the term of Four years a County Judge, who shall hold the County Court at times to be regulated by law.—

Section 12. The County Court shall have the jurisdiction pertaining to Probate Courts, and boards of County Commissioners, and such other powers, and duties, and such civil Jurisdiction, not exceeding the amount or value of five hundred dollars, and such criminal jurisdiction not extending to death or imprisonment in the penitentiary, as may be

prescribed by law.— But the Legislative Assembly may provide for the election of Two Commissioners to sit with the County Judge whilst transacting County business, in any, or all of the Counties, or may provide a seperate [*sic*] board for transacting such business.—

Section 13. The County Judge may grant preliminary injuctions [*sic*], and such other writs as the Legislative Assembly may authorize him to grant, returnable to the Circuit Court, or otherwise as may be provided by law; and may hear, and decide questions arising upon habeas corpus; provided such decision be not against the authority, or proceedings of a Court, or Judge of equal, or higher jurisdiction.—

Section 14. The Counties having less than ten thousand white inhabitants, shall be reimbursed wholly or in part for the salary, and expenses of the County Court by fees, percentage, & other equitable taxation, of the business done in said Court & in the office of the County Clerk.

Section 15. A County Clerk shall be elected in each County for the term of Two years, who shall keep all the public records, books, and papers of the County; record conveyances, and perform the duties of Clerk of the Circuit, and County Courts, and such other duties as may be prescribed by law:— But whenever the number of voters in any County shall exceed Twelve Hundred, the Legislative Assembly may authorize the election of one person as Clerk of the Circuit Court, one person as Clerk of the County Court, and one person Recorder of conveyances.—

Section 16. A sheriff shall be elected in each County for the term of Two years, who shall be the ministerial officer of the Circuit, and County Courts, and shall perform such other duties as may be prescribed by law.—

Section 17. There shall be elected by districts comprised of one, or more counties, a sufficient number of prosecuting Attorneys, who shall be the law officers of the State, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of Law, and general police as the Legislative Assembly may direct.—

Section 18. The Legislative Assembly shall so provide that the most competent of the permanent citizens of the

county shall be chosen for jurors; and out of the whole number in attendance at the Court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment. But the Legislative Assembly may modify or abolish grand juries.

Section 19.   Public Officers shall not be impeached, but incompetency, corruption, malfeasance, or delinquency in office may be tried in the same manner as criminal offences [*sic*], and Judgment may be given of dismissal from Office, and such further punishment as may have been prescribed by law.—

Section 20.   The Govenor [*sic*] may remove from Office a Judge of the Supreme Court, or Prosecuting Attorney upon the Joint resolution of the Legislative Assembly, in which Two Thirds of the members elected to each house shall concur, for incompetency, Corruption, malfeasance, or delinquency in office, or other sufficient cause stated in such resolution.—

Section 21.   Every judge of the Supreme Court before entering upon the duties of his office shall take, subscribe, and transmit to the Secretary of State the following oath.— I _____ do solemnly swear (or affirm) that I will support the Constitution of the United States, and the constitution of the State of Oregon, and that I will faithfully, and impartially discharge the duties of a Judge of the Supreme, and Circuits [*sic*] Courts of said State according to the best of my ability, and that I will not accept any other office, except Judicial offices during the term for which I have been elected.

## APPENDIX B

### Article VII (Amended) (1910)

Section 1. The judicial power of the State shall be vested in one supreme court and in such other courts as may from time to time be created by law. The judges of the Supreme and other courts shall be elected by the legal voters of the State or of their respective districts for a term of six years, and shall receive such compensation as may be provided by law, which compensation shall not be diminished during the term for which they are elected.

Section 2. The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the supreme court may, in its own discretion, take original jurisdiction in mandamus, *quo warranto* and *habeas corpus* proceedings.

Section 3. In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the supreme court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court; *provided*, that nothing in this section shall be construed to authorize the supreme court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court.

Section 4. The terms of the supreme court shall be appointed by law; but there shall be one term at the seat of government annually. At the close of each term the judges shall file with the secretary of state concise written statements of the decisions made at that term.

Section 5. In civil cases three-fourths of the jury may render a verdict. The legislative assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment. But provision may be made by law for drawing and summoning the grand jurors from the regular jury list at any time, separate from the panel of petit jurors, and for the sitting of the grand jury during vacation as well as session of the court, as the judge may direct. No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by a grand jury; *provided, however*, that any district attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in form.

Section 6. Public officers shall not be impeached; but incompetency, corruption, malfeasance or delinquency in office may be tried in the same manner as criminal offenses, and judgment may be given of dismissal from office, and such further punishment as may have been prescribed by law.

Section 7. Every judge of the supreme court, before entering upon the duties of his office, shall take and subscribe, and transmit to the secretary of state, the following oath:

"I, _____ _____, do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the state of Oregon, and that I will faithfully and impartially discharge the duties of a judge of the Supreme Court of this State, according to the best of my ability, and that I will not accept any other office, except judicial offices, during the term for which I have been elected."

## APPENDIX C

### Article VII (Amended) (2005)

Section 1.  The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. The judges of the supreme and other courts shall be elected by the legal voters of the state or of their respective districts for a term of six years, and shall receive such compensation as may be provided by law, which compensation shall not be diminished during the term for which they are elected.

Section 1a.  Notwithstanding the provisions of section 1, Article VII (Amended) of this Constitution, a judge of any court shall retire from judicial office at the end of the calendar year in which he attains the age of 75 years. The Legislative Assembly or the people may by law:

(1)  Fix a lesser age for mandatory retirement not earlier than the end of the calendar year in which the judge attains the age of 70 years;

(2)  Provide for recalling retired judges to temporary active service on the court from which they are retired; and

(3)  Authorize or require the retirement of judges for physical or mental disability or any other cause rendering judges incapable of performing their judicial duties.

This section shall not affect the term to which any judge shall have been elected or appointed prior to or at the time of approval and ratification of this section.

Section 2.  The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the supreme court may, in its own discretion, take original jurisdiction in mandamus, quo warranto and habeas corpus proceedings.

Section 2a.  The Legislative Assembly or the people may by law empower the Supreme Court to:

(1)  Appoint retired judges of the Supreme Court or judges of courts inferior to the Supreme Court as temporary members of the Supreme Court.

(2)  Appoint members of the bar as judges pro tempore of courts inferior to the Supreme Court.

(3)  Assign judges of courts inferior to the Supreme Court to serve temporarily outside the district for which they were elected.

A judge or member of the bar so appointed or assigned shall while serving have all the judicial powers and duties of a regularly elected judge of the court to which he is assigned or appointed.

Section 2b.  Notwithstanding the provisions of section 23, Article IV of this Constitution, laws creating courts inferior to the Supreme Court or prescribing and defining the jurisdiction of such courts or the manner in which such jurisdiction may be exercised, may be made applicable:

(1)  To all judicial districts or other subdivisions of this state; or

(2)  To designated classes of judicial districts or other subdivisions; or

(3)  To particular judicial districts or other subdivisions.

Section 3.  In actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. Until otherwise provided by law, upon appeal of any case to the supreme court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should

be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court. Provided, that nothing in this section shall be construed to authorize the supreme court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court.

Section 4.   The terms of the supreme court shall be appointed by law; but there shall be one term at the seat of government annually. At the close of each term the judges shall file with the secretary of state concise written statements of the decisions made at that term.

Section 5.   (1) The Legislative Assembly shall provide by law for:

(a)   Selecting juries and qualifications of jurors;

(b)   Drawing and summoning grand jurors from the regular jury list at any time, separate from the panel of petit jurors;

(c)   Empaneling more than one grand jury in a county; and

(d)   The sitting of a grand jury during vacation as well as session of the court.

(2)   A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment.

(3)   Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

(4)   The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

(5)   The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing.

(6)   An information shall be substantially in the form provided by law for an indictment. The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form.

(7)   In civil cases three-fourths of the jury may render a verdict.

Section 6.   Public officers shall not be impeached; but incompetency, corruption, malfeasance or delinquency in office may be tried in the same manner as criminal offenses, and judgment may be given of dismissal from office, and such further punishment as may have been prescribed by law.

Section 7.   Every judge of the supreme court, before entering upon the duties of his office, shall take and subscribe, and transmit to the secretary of state, the following oath:

"I, _____, do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of Oregon, and that I will faithfully and impartially discharge the duties of a judge of the supreme court of this state, according to the best of my ability, and that I will not accept any other office, except judicial offices, during the term for which I have been elected."

Section 8.   (1)  In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be removed or suspended from his judicial office by the Supreme Court, or censured by the Supreme Court, for:

(a)   Conviction in a court of this or any other state, or of the United States, of a crime punishable as a felony or a crime involving moral turpitude; or

(b) Wilful misconduct in a judicial office where such misconduct bears a demonstrable relationship to the effective performance of judicial duties; or

(c) Wilful or persistent failure to perform judicial duties; or

(d) Generally incompetent performance of judicial duties; or

(e) Wilful violation of any rule of judicial conduct as shall be established by the Supreme Court; or

(f) Habitual drunkenness or illegal use of narcotic or dangerous drugs.

(2) Notwithstanding section 6 of this Article, the methods provided in this section, section 1a of this Article and in section 18, Article II of this Constitution, are the exclusive methods of the removal, suspension, or censure of a judge.

Section 9. Provision may be made by law for juries consisting of less than 12 but not less than six jurors.